STATE OF NORTH CAROLINA v. CEDRIC WILSON, JR. AND HAYDEN CALVERT

No. COA01-1539

(Filed 31 December 2002)

## 1. Search and Seizure—traffic stop—cocaine—motion to suppress—probable cause

The trial court did not commit plain error in a trafficking in cocaine case by denying defendants' pretrial motions to suppress all evidence obtained as a result of the search of the vehicle in which they were riding even though defendants contend it was a pretextual stop, because: (1) the officers had probable cause to stop defendants' vehicle since it was traveling behind another vehicle at a distance of less than one car length in violation of N.C.G.S. § 20-152(a) and at a speed of sixty-nine miles per hour; and (2) probable cause meant the stop was not pretextual and further investigation was unnecessary for purposes of issuing a warning ticket.

## 2. Search and Seizure—traffic stop—cocaine—motion to suppress—reasonableness of length of detention

The trial court did not commit plain error in a trafficking in cocaine case by denying defendants' pretrial motions to suppress all evidence obtained as a result of the search of the vehicle in which they were riding even though defendants contend the detention of their vehicle was unreasonably long and violated their Fourth Amendment rights, because: (1) defendants were not initially stopped and detained by the officer for an unreasonably long period of time when the process took approximately seven to eight minutes and the officer's questions and actions were all reasonably related to the officer's underlying justification of issuing a warning ticket; and (2) the officer had reasonable suspicion to further detain defendants after the warning ticket was issued when the trained police officer with special knowledge in the area of illegal drugs knew defendant driver's actions were consistent with those of a drug trafficker.

## 3. Search and Seizure-traffic stop—cocaine—motion to suppress—voluntariness of consent

The trial court did not commit plain error in a trafficking in cocaine case by denying defendants' pretrial motions to suppress all evidence obtained as a result of the search of the vehicle in

which they were riding even though defendants contend defendant driver's consent to search the vehicle was not obtained freely and voluntarily, because: (1) defendant as the driver of the car and in apparent control of its operation was an acceptable person to give consent to the search in the absence of the vehicle's owner; and (2) there was no evidence that the officers at any point made a concerted effort to coerce defendants or displayed their authority in a manner that would make defendant driver feel as though he had no choice but to consent.

### 4. Drugs—trafficking in cocaine—constructive possession—sufficiency of evidence

The trial court did not err by denying a defendant's motion to dismiss the trafficking in cocaine charge against him even though he contends the State failed to present sufficient evidence of constructive possession, because: (1) power to control the vehicle where a controlled substance was found is sufficient in and of itself to give rise to the inference of knowledge and possession sufficient to go to the jury; (2) defendant was the driver of the vehicle where the drugs were found and aware of the circumstances by which he came into possession of the vehicle; (3) defendant was aware that his codefendant disappeared for a while upon arrival in Florida and returned later with a friend's car to drive back to Ohio; (4) the officer testified that defendant was extremely nervous when pulled over by the officers; and (5) there was evidence that the vehicle had a strong smell of air freshener.

### 5. Drugs—trafficking in cocaine—instructions on lesser-included offenses

The trial court did not err by failing to instruct the jury as to the three different levels of trafficking in cocaine under N.C.G.S. § 90-95(h)(3)(a-c), because: (1) the only difference between the greater and lesser levels of the offense relate to the amount of cocaine found; and (2) it is undisputed that the amount of cocaine discovered by the officers weighed 1,995 grams.

Appeal by defendants from judgments entered 3 May 2001 by Judge Sanford L. Steelman, Jr. in Iredell County Superior Court. Heard in the Court of Appeals 18 September 2002.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Joan M. Cunningham, for the State.*

*Martin & Martin, P.A., by J. Matthew Martin and Harry C.
Martin, for defendant-appellant Cedric Wilson, Jr.*

*The Law Firm of Charles L. Alston, Jr., by Charles L. Alston, Jr.,
for defendant-appellant Hayden Calvert.*

HUNTER, Judge.

Defendants, Cedric Wilson, Jr. ("Defendant Wilson") and Hayden
Calvert ("Defendant Calvert"), appeal from their convictions of two
counts of trafficking in cocaine, felonies under Section 90-95(h) of
the North Carolina General Statutes. We find no error.

The State's evidence tended to show that on 8 October 1999,
Trooper R. D. Mountain ("Trooper Mountain") of the North Carolina
Highway Patrol observed a white Dodge following another vehicle
too closely. The Dodge was less than one car length behind the vehi-
cle and traveling approximately sixty-nine miles per hour. Trooper
Mountain proceeded to follow the Dodge, which had slowed its speed
to approximately fifty miles per hour in a seventy mile-per-hour zone.

The driver of the vehicle, Defendant Wilson, pulled over immedi-
ately when signaled by the officer. Defendant Calvert was the only
passenger in the car. Upon request, Defendant Wilson produced his
Ohio driver's license and a Florida vehicle registration in the name of
Calvin Smith. During this time, Trooper Mountain observed a road
atlas in the back seat and screws missing from the dashboard. There
was also a strong odor of air freshener coming from inside the vehi-
cle. Trooper Mountain asked Defendant Wilson to return with him to
the patrol car so as to issue Defendant Wilson a warning ticket for fol-
lowing too closely, a violation under Section 20-152 of the North
Carolina General Statutes.

Once in the patrol car, Trooper Mountain ran checks on
Defendant Wilson's license and the vehicle registration. Trooper
Mountain observed that Defendant Wilson was "extremely nervous"
while in the patrol car. Trooper Mountain asked Defendant Wilson
about his trip to Florida and about the vehicle. Defendant Wilson told
Trooper Mountain he had accompanied Defendant Calvert to Florida
for the purpose of visiting Defendant Calvert's grandmother.
Defendant Wilson explained that he and Defendant Calvert traveled
from Ohio to Florida in a white Plymouth Sundance. Once in Florida,
that vehicle broke down and Defendant Calvert borrowed his friend's
vehicle for their return trip. Defendant Wilson stated that the owner
of the Dodge was planning to fly to Ohio and pick up the vehicle.

Meanwhile, Officer Rodney Crater ("Officer Crater") and Sergeant William Grey ("Sergeant Grey") arrived at the scene. Officer Crater asked Defendant Calvert to exit the Dodge while his police dog, Zero, performed an "exterior sniff." Officer Crater described Defendant Calvert also as being very nervous. Sergeant Grey asked Defendant Calvert a few questions about his trip to Florida. Defendant Calvert told Sergeant Grey defendants had gone to Florida to visit his grandmother. He said the vehicle they were driving broke down and a friend loaned them the Dodge to return home. When asked what type of car defendants had driven to Florida, Defendant Calvert said, "[i]t's a Camry—no, it's an Acura."

Trooper Mountain issued Defendant Wilson a warning ticket. As Defendant Wilson proceeded to exit the patrol car, Trooper Mountain asked Defendant Wilson if he could ask him additional questions. Defendant Wilson consented. The additional questions related to illegal weapons and drugs. Trooper Mountain then asked Defendant Wilson if he could search the Dodge. Defendant Wilson agreed and signed a consent form. Another officer arrived at the scene after Defendant Wilson gave his consent.

While searching the vehicle's engine compartment, Sergeant Grey noticed the battery looked like it had been re-sealed. The battery seemed lighter than normal, and upon testing the inside depth of the battery, a false bottom was discovered. At that point, the officers and defendants drove to the nearest gas station to further inspect the battery. When the battery was opened, the officers found cocaine inside that was later determined to have a weight of 1,995 grams. Trooper Mountain testified at trial that immediately after finding the cocaine, Defendant Calvert stated, "it's mine." Trooper Mountain asked Defendant Calvert "what" and Defendant Calvert said "cocaine."

On 19 and 20 July 2000 respectively, Defendant Wilson and Defendant Calvert filed separate motions to suppress the cocaine, each arguing that the search and seizure was unlawful. Both defendants' motions were denied. Thereafter, when the cocaine was admitted into evidence at trial, neither defendant objected. On 3 May 2001, Defendants Wilson and Calvert were found guilty of trafficking in cocaine. Both defendants appeal.

Prior to addressing both defendants' assignments of error, we note that they filed a joint record on appeal in this case which failed to include Defendant Calvert's (1) Verdict forms, (2) Judgment and Commitment, and (3) Appellate Entries. On our own initiative, this

Court contacted Defendant Calvert's attorney and ordered these documents be "sent up and added to the record on appeal." N.C.R. App. P. 9(b)(5). Having received the necessary documents, we may now reach the merits of Defendant Calvert's assigned errors.

I.

Defendants first argue the trial court erred by denying their pretrial motions to suppress all of the evidence obtained as a result of the search conducted by the officers. Specifically, defendants contend the evidence should have been suppressed because (1) Trooper Mountain's stop of their vehicle was pretextual, (2) their detainment by the officers was unreasonably long, and (3) Defendant Wilson's consent to the search was not given voluntarily. However, both defendants failed to renew their objection to the admission of this evidence at trial. Thus, we must review their argument using the "plain error" rule. *State v. Black*, 308 N.C. 736, 740, 303 S.E.2d 804, 806 (1983).

The "plain error" rule:

"[I]s always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has ' "resulted in a miscarriage of justice or in the denial to appellant of a fair trial[.]" ' "

*Id.* (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)).

1. Pretextual Stop

**[1]** In ruling on defendants' motions to suppress, the trial court in the present case concluded "Trooper Mountain had a reasonable, articulable suspicion to stop defendants' vehicle for a violation of NCGS 20-152." Defendants argue that since probable cause is the requisite standard under this statute and there were no objective facts from which the court could have concluded probable cause existed, Trooper Mountain's stopping their vehicle was a mere pretext for investigating them for illegal drug possession. We disagree.

"Although the trial court's findings of fact are generally deemed conclusive where supported by competent evidence, 'a trial court's

conclusions of law regarding whether the officer had reasonable suspicion [or probable cause] to detain a defendant is reviewable *de novo*.' " *State v. Young*, 148 N.C. App. 462, 466, 559 S.E.2d, 814, 818 (2002) (alteration in original) (quoting *State v. Kincaid*, 147 N.C. App. 94, 97, 555 S.E.2d 294, 297 (2001)), *appeal dismissed and disc. review denied*, 355 N.C. 500, 564 S.E.2d 233 (2002). After conducting such a review, we conclude probable cause was the requisite standard in this case and Trooper Mountain did have probable cause to stop defendants' vehicle.

In *Young*, Judge K. Edward Greene wrote a concurring opinion that addressed when reasonable suspicion or probable cause is required in the context of a traffic stop. His concurring opinion stated in pertinent part:

While there are instances in which a traffic stop is also an investigatory stop, warranting the use of the lower standard of reasonable suspicion, the two are not always synonymous. A traffic stop made on the basis of a readily observed traffic violation such as speeding or running a red light is governed by probable cause. *See, e.g., State v. McClendon*, 130 N.C. App. 368, 374, 502 S.E.2d 902, 906 (1998) (officer had probable cause to stop vehicle and issue citation for speeding and following too closely), *affirmed*, 350 N.C. 630, 517 S.E.2d 128 (1999); *State v. Hamilton*, 125 N.C. App. 396, 399, 481 S.E.2d 98, 100 (officer had probable cause to stop the vehicle for the purpose of issuing seat belt citations because he had observed that both the driver and the defendant were not wearing seat belts), *disc. review denied*, 345 N.C. 757, 485 S.E.2d 302 (1997); *see also* N.C. Gen. Stat. § 15A-302(b) (1999) (an officer may issue a citation to any person who he has probable cause to believe has committed a misdemeanor or infraction). Probable cause is "a suspicion produced by such facts as indicate a fair probability that the person seized has engaged in or is engaged in criminal activity." *State v. Schiffer*, 132 N.C. App. 22, 26, 510 S.E.2d 165, 167, *disc. review denied*, 350 N.C. 847, 539 S.E.2d 5 (1999). On the other hand, a traffic stop based on an officer's [reasonable] *suspicion* that a traffic violation is being committed, but which can only be verified by stopping the vehicle, such as drunk driving or driving with a revoked license, is classified as an investigatory stop, also known as a *Terry* stop. *See, e.g., State v. Kincaid*, [147] N.C. App. [94, 98], 555 S.E.2d 294, 297-98 (2001) (officer had reasonable suspicion to stop the defendant for a revoked license based on his

knowledge of the defendant); *Schiffer*, 132 N.C. App. at 26, 510 S.E.2d at 167 (deputy had reasonable suspicion to stop the defendant after noticing Florida tags and window tinting which the deputy believed was darker than permitted under North Carolina law). Such an investigatory-type traffic stop is justified if the totality of circumstances affords an officer reasonable grounds to believe that criminal activity may be afoot. *State v. Peck*, 305 N.C. 734, 741, 291 S.E.2d 637, 641 (1982) (quoting *State v. Streeter*, 283 N.C. 203, 210, 195 S.E.2d 502, 507 (1973)).

*Id.* at 470-71, 559 S.E.2d at 820-21 (Greene, J., concurring). Having found this analysis of reasonable suspicion and probable cause to be instructive, we apply it to the case *sub judice*.

Here, Trooper Mountain testified at the suppression hearing and trial that he observed defendants' Dodge traveling behind another vehicle at a distance of less than one car length and at a speed of sixty-nine miles per hour. Section 20-152(a) provides "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." N.C. Gen. Stat. § 20-152(a) (2001). As referenced in Judge Greene's concurring opinion, our Supreme Court has held that where a "defendant's vehicle was . . . following too closely, which is a violation of N.C.G.S. § 20-152[] . . . the officers had probable cause to stop the vehicle[] and to issue a warning ticket . . . ." *State v. McClendon*, 350 N.C. 630, 636, 517 S.E.2d 128, 132 (1999). Trooper Mountain's personal observation of the Dodge's speed and its following distance to another vehicle provided him with a sufficient blend of circumstances to establish that Trooper Mountain had probable cause to believe that defendants were in violation of Section 20-152. Since Trooper Mountain had probable cause that a traffic violation had occurred, further investigation was unnecessary for purposes of issuing Defendant Wilson a warning ticket. Thus, defendants' motion to suppress was properly denied because the stop was not pretextual; Trooper Mountain had probable cause to stop defendants' vehicle for following another vehicle too closely.

### 2. Detainment of Defendants

**[2]** Second, defendants argue the initial stop of their vehicle was unreasonably long thereby resulting in a violation of the Fourth Amendment of the United States Constitution.

Detentions protected by the Fourth Amendment include "brief investigatory detentions such as those involved in the stopping of a vehicle." *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994). Such a stop must be based on a "reasonable suspicion," determined by looking at the totality of the circumstances. *Id.* " 'The scope of the detention must be carefully tailored to its underlying justification.' " *State v. Morocco*, 99 N.C. App. 421, 427-28, 393 S.E.2d 545, 549 (1990) (quoting *Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d. 229, 238 (1983)).

The evidence showed that defendants were not stopped and detained by Trooper Mountain for an unreasonably long period of time. Defendant Wilson's violation of Section 20-152(a) established the probable cause needed to initially stop the vehicle—meeting the lesser standard of reasonable suspicion. Once stopped, defendants were detained long enough for Trooper Mountain to ask Defendant Wilson questions about the vehicle and his travel plans, as well as check Defendant Wilson's license and the vehicle registration, both of which were out-of-state. While in the patrol car, Trooper Mountain observed that Defendant Wilson was extremely nervous. Once Trooper Mountain completed the required checks, he issued Defendant Wilson a warning ticket, and Wilson was free to leave. This process took approximately seven to eight minutes. Thus, these questions and actions were all reasonably related to Trooper Mountain's underlying justification of issuing a warning ticket.

Defendants further argue their detention subsequent to the issuance of the warning ticket was unreasonably long. The North Carolina Supreme Court has held that in order to further detain a person after a lawful stop, an officer must have a "reasonable suspicion, based on specific and articulable facts, that criminal activity is afoot." *State v. McClendon*, 350 N.C. at 636, 517 S.E.2d at 134. These facts, as well as the rational inferences drawn from them, are to be "viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." *State v. Watkins*, 337 N.C. at 441, 446 S.E.2d at 69-70. Again, the court must look to the totality of the circumstances to determine if a reasonable suspicion exists to allow further delay. *Id.*

As previously stated, the court concluded that Trooper Mountain had a reasonable suspicion to further detain defendants after the warning ticket was issued. The evidence established that (1) the vehicle contained a strong odor of air freshener; (2) an atlas was seen

in the back seat and screws were missing from the dashboard; (3) the vehicle was registered in Florida, but the driver was from Ohio; (4) there was a discrepancy in the defendants' descriptions of the vehicle left in Florida; and (5) Defendant Wilson was very nervous, tapping his hands and feet while in Trooper Mountain's patrol car. Additionally, Trooper Mountain, as a trained police officer with special knowledge in the area of illegal drugs, knew that Defendant Wilson's actions were consistent with those of a drug trafficker. Therefore, the evidence, based on the circumstances in the present case, provided Trooper Mountain with reasonable suspicion to further delay defendants.

### 3. Consent to Search

[3] Defendants' final argument regarding suppression of the evidence contends Defendant Wilson's consent was invalid because it was not obtained freely and voluntarily. We disagree.

The consent needed to justify a search may be given by the "person in apparent control of [a vehicle's] operation and contents at the time the consent is given." N.C. Gen. Stat. § 15A-222 (2001). When seeking to rely on the consent given to support the validity of a search, the State has "the burden of proving that the consent was voluntary." *State v. Morocco*, 99 N.C. App. at 429, 393 S.E.2d at 549. In determining whether this burden has been met, the court must look at the totality of the circumstances. *State v. Steen*, 352 N.C. 227, 240, 536 S.E.2d 1, 9 (2000), *cert. denied*, 531 U.S. 1167, 148 L. Ed. 2d 997 (2001).

In the case *sub judice*, the totality of the circumstances established Defendant Wilson's consent was indeed given freely and voluntarily. Defendants were pulled over by one police officer. Three additional police officers arrived at the scene some time thereafter. With the exception of his short conversation with Sergeant Grey, Defendant Wilson only interacted with Trooper Mountain prior to giving his consent. Defendant Wilson, as the driver of the car and in apparent control of its operation, was an acceptable person to give consent to the search in the absence of the vehicle's owner. *See State v. McDaniels*, 103 N.C. App. 175, 405 S.E.2d 358 (1991). Additionally, Sergeant Grey spoke with Defendant Calvert while Officer Crater conducted an "exterior sniff" of the vehicle with Zero. The fourth officer did not arrive on the scene until after consent was given. There is no evidence that the officers, at any point, made a concerted effort to coerce defendants or displayed their authority in a manner that

would make Defendant Wilson feel as though he had no choice but to consent.

Accordingly, the trial court did not commit error, much less "plain error," in denying defendants' motions to suppress the evidence obtained from the search.

II.

[4] Defendant Wilson also argues that the trial court erred by denying his motion to dismiss the trafficking in cocaine charge against him because the State did not present sufficient evidence to convict him on the theory of constructive possession. We conclude that there was sufficient evidence and the trial court properly denied Defendant Wilson's motion to dismiss.

In order to survive a motion to dismiss, the trial court must view the evidence in the light most favorable to the State, drawing every reasonable inference in favor of the State. *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992). The evidence considered must be "substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense." *State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 653 (1982). Whether the evidence presented is substantial is a question of law for the court. *State v. Stephens*, 244 N.C. 380, 384, 93 S.E.2d 431, 433 (1956).

With respect to Defendant Wilson's argument, "[o]ur statutes provide that a person who possesses twenty-eight grams or more of cocaine shall be guilty of the felony known as 'trafficking in cocaine.' The possession element of this felony can be proven by showing either actual possession or constructive possession." *State v. Siriguanico*, 151 N.C. App. 107, 110, 564 S.E.2d 301, 304 (2002) (citation and footnote omitted). In determining whether possession is constructive, this Court has held:

"Where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession." It is not necessary to show that an accused has exclusive control of the premises where [drugs and/or drug] paraphernalia are found, but "where possession . . . is nonexclusive, constructive possession . . . may not be inferred without other incriminating circumstances."

*State v. McLaurin*, 320 N.C. 143, 146, 357 S.E.2d 636, 638 (1987) (citations omitted). Additionally, this Court has recognized that constructive possession can be inferred when there is evidence that a defendant had the power to control the vehicle where a controlled substance is found. *State v. Dow*, 70 N.C. App. 82, 85, 318 S.E.2d 883, 886 (1984). "[P]ower to control the [vehicle] where a controlled substance was found is sufficient, in and of itself, to give rise to the inference of knowledge and possession sufficient to go to the jury." *Id.*

When viewed in the light most favorable to the State, there is considerable evidence to support the State's theory of constructive possession. The evidence showed that Defendant Wilson was the driver of the vehicle where the drugs were found and aware of the circumstances by which he came into possession of the Dodge. By his own admission, Defendant Wilson was also aware that Defendant Calvert disappeared for a while upon arrival in Florida and returned later with a "friend's" car to drive back to Ohio. Moreover, Trooper Mountain testified that Defendant Wilson was "extremely nervous" when pulled over by the officers. Finally, there was evidence that the vehicle had a strong smell of air freshener. These additional circumstances tend to further incriminate Defendant Wilson when all reasonable inferences are made in favor of the State. Thus, the court did not err in denying the motion to dismiss, and the jury was entitled to hear an instruction as to the State's theory of constructive possession.

III.

[5] Finally, Defendant Calvert argues the trial court erred by its failure to instruct the jury as to the three different levels of trafficking in cocaine. We disagree.

A "[d]efendant is 'entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *State v. Leazer*, 353 N.C. 234, 237, 539 S.E.2d 922, 924 (2000) (quoting *Keeble v. United States*, 412 U.S. 205, 208, 36 L. Ed. 2d 844, 847 (1973)). When the offense is for trafficking in cocaine, the only difference between the greater and lesser levels of the offense relate to the amount of cocaine found. N.C. Gen. Stat. § 90-95(h)(3)(a-c) (2001). In the present case, it is undisputed that the amount of cocaine discovered by the officers weighed 1,995 grams. Since the weight of the cocaine was clear, the jury could not have convicted Defendant Calvert of a lesser level of trafficking in cocaine in the absence of evidence sup-

porting a lesser offense. Thus, the court did not err by failing to instruct the jury as to the different levels by which Defendant Calvert could have been found guilty of this offense.

For the aforementioned reasons, there was no error in the trial and convictions of defendants.

No error.

Judges WALKER and McGEE concur.