STATE OF NORTH CAROLINA v. GLENN DOUGLAS ATWELL

No. 8221SC1059

(Filed 21 June 1983)

**1. Criminal Law § 146.5— denial of motion to suppress—failure to give notice of appeal prior to guilty plea**

Where a trial judge denied defendant's motion to suppress, and where the court found that plea negotiations were finalized before either the court or the prosecutor was made aware of defendant's intent to appeal, but where there was some evidence that the district attorney's office and the court had notice of a possible appeal of the denial of the suppression motion before the guilty plea, the Court in its discretion decided to treat the purported appeal as a petition for certiorari. G.S. 15A-979(b).

**2. Searches and Seizures § 24— validity of search warrant—information from informers**

A search warrant met the requirements of G.S. 15A-244 and G.S. 15A-245(b) where (1) the warrant was issued by a proper person and described the place to be searched and items to be seized with sufficient particularity, (2) the affidavit, which was based on information from informants, stated sufficient underlying circumstances to understand how the informant reached his conclusion, and the affidavit provided sufficient reasons to believe that the informants were credible and that the information was reliable in that the application specifically said that two sources had proved to be truthful and reliable in the past and that the detailed nature of the report and the fact that the officers swore that the third informer was reliable was sufficient to warrant a finding of probable cause.

APPEAL by defendant from *Albright, Judge.* Judgment entered 26 May 1982 in Superior Court, FORSYTH County. Heard in the Court of Appeals 11 April 1983.

The defendant appeals from a guilty plea to a charge of manufacturing cocaine in violation of G.S. 90-95(a)(1). He received a three-year sentence when he entered his guilty plea on 26 May 1982.

The defendant originally pled not guilty after being indicted for the two charges of manufacturing cocaine and possession of cocaine with intent to sell and deliver. Following the denial of his motion to suppress on 20 May 1982, he entered a plea of guilty. The defendant did not give notice of appeal from the denial of his motion to suppress until *after* he was sentenced.

The State moved on 30 August 1982 to dismiss the defendant's appeal. This motion was denied by Judge Albright on 21

September 1982 after hearing arguments of counsel, consideration of their briefs and affidavits, and an examination of the record in the case. Although this order concluded that the defendant waived his right to contest the denial of the suppression motion, the judge concluded that he only had authority to settle the record on appeal.

*Attorney General Edmisten, by Assistant Attorney General Donald W. Grimes, for the State.*

*Bruce C. Fraser for the defendant-appellant.*

ARNOLD, Judge.

I. Notice of Appeal

[1] G.S. 15A-979(b) provides that an order denying a motion to suppress evidence can be reviewed upon an appeal from a guilty plea. But *State v. Reynolds,* 298 N.C. 380, 259 S.E. 2d 843 (1979), *cert. denied,* 446 U.S. 941 (1980), held that "when a defendant intends to appeal from a suppression motion denial pursuant to G.S. 15A-979(b), he must give notice of his intention to the prosecutor and the court before plea negotiations are finalized or he will waive the appeal of right provisions of the statute." 298 N.C. at 397, 259 S.E. 2d at 853.

The evidence in the record does not clearly show that the notice required by *Reynolds* was given. An affidavit by the defendant's attorney states that he discussed a secured bond pending appeal with members of the District Attorney's office. The affidavit also alleges that Judge Albright was aware of the appeal before the guilty plea was entered.

The motion to dismiss the appeal by Assistant District Attorney Richard R. Lyle denied that his office or the court received the requisite notice. An affidavit by Assistant District Attorney C. C. Walker said that he did not remember if the defendant's attorney mentioned an appeal bond. Walker added, however, that he was not surprised by the appeal.

Counsel for a codefendant, Gary W. Willard, submitted an affidavit which said that he heard counsel for the defendant raise the appeal bond question in conversations with Walker prior to

the denial of the motion to suppress. Willard could not state if Lyle heard any discussion about the appeal bond.

In his 21 September 1982 order denying the motion to dismiss the appeal, Judge Albright found the following facts:

> 4. That Defendant did not give notice to the Prosecutor of his intention to appeal the suppression motion denial pursuant to N.C.G.S. 15A-979(b), and in no manner or form did the Defendant give notice of such intent to the Court at any time; and

> 5. That plea negotiations were finalized before either the Court or the Prosecutor was made aware of the intent to appeal.

Although we conclude that the defendant's appeal is not properly before us, we have decided in our discretion to treat the purported appeal as a petition for certiorari, to allow it, and to consider the case on its merits. *See* Rule 21(a)(1), N.C. Rules App. Proc.; *State v. Walden*, 52 N.C. App. 125, 127, 278 S.E. 2d 265, 266 (1981). There is at least some evidence that the district attorney's office and the Court had notice of a possible appeal of the denial of the suppression motion before the guilty plea. This distinguishes this case from *Reynolds*, where there was no such evidence. *See* 298 N.C. at 396-97, 259 S.E. 2d at 853.

II. Suppression Motion

[2] The defendant argues that his motion to suppress should have been granted. He contends that the affidavit underlying the search warrant was insufficient on its face to establish probable cause that the search would discover the items specified in the application as required by G.S. 15A-245(b). A search of the defendant's residence resulted in his arrest.

G.S. 15A-244 requires that all applications for a search warrant must contain:

(1) The name and title of the applicant; and

(2) A statement that there is probable cause to believe that items subject to seizure under G.S. 15A-242 may be found in or upon a designated or described place, vehicle, or person; and

(3) Allegations of fact supporting the statement. The statements must be supported by one or more affidavits particularly setting forth the facts and circumstances establishing probable cause to believe that the items are in the places or in the possession of the individuals to be searched; and

(4) A request that the court issue a search warrant directing a search for and the seizure of the items in question.

The application here meets the requirements of this statute.

A search warrant can only be issued upon a determination of probable cause. U.S. Const. amend. IV. The person who makes that determination must be "a neutral and detached magistrate instead of . . . the officer engaged in the often competitive enterprise of ferreting out crime." *Coolidge v. New Hampshire*, 403 U.S. 443, 449 (1971).

The warrant should describe with particularity the place to be searched since general warrants are repugnant to the Fourth Amendment, which has been applied to the states through incorporation in the Fourteenth Amendment. *Stanford v. Texas*, 379 U.S. 476 (1965). The warrant in the case *sub judice* was issued by a proper person and described the place to be searched and the items to be seized with sufficient particularity.

When the application is based on an informant's tip, however, it must also meet the two-prong test developed by the Supreme Court in *Spinelli v. United States*, 393 U.S. 410 (1969), and *Aguilar v. Texas*, 378 U.S. 108 (1964).

First, the affidavit must set forth sufficient underlying circumstances to permit a neutral and detached magistrate to understand how the informant reached his conclusion.

Second, the affidavit must establish the reliability of the informant. This can be done by showing prior use and reliability of the informant, a declaration against his penal interest, clear and precise details in the tip indicating personal observation and knowledge of the location of the evidence, or membership of the informant in a reliable group like the clergy. *Spinelli*, 393 U.S. at 412-15; *Aguilar*, 378 U.S. at 114. *See also*, C. Whitebreak, *Constitutional Criminal Procedure* 49-50 (1978).

The application here states:

I, E. B. Hiatt, Jr., Sgt. Narcotics Division, Forsyth County Sheriff's Department being duly sworn, hereby request that the court issue a warrant to search the (p̶e̶r̶s̶o̶n̶) (curtlidge) (place) (v̶e̶h̶i̶c̶l̶e̶) described in this application and to find and seize the items described in this application. There is probable cause to believe that certain property, to wit: Cocaine, envelope covers, utility bills, receipts, and similar recent writings of possession (constitutes evidence of) (c̶o̶n̶s̶t̶i̶t̶u̶t̶e̶s̶/̶e̶v̶i̶d̶e̶n̶c̶e̶/̶o̶f̶/̶t̶h̶e̶/̶i̶d̶e̶n̶t̶i̶t̶y̶/̶o̶f̶/̶a̶/̶p̶e̶r̶s̶o̶n̶/̶p̶a̶r̶t̶i̶c̶i̶p̶a̶t̶i̶n̶g̶ i̶n̶) a crime, to wit: Possession of Cocaine, a Schedule II controlled substance as described in Chapter 90 of the North Carolina Controlled Substances Act. and the property is located (in the place) (i̶n̶/̶t̶h̶e̶/̶v̶e̶h̶i̶c̶l̶e̶) (curtlidge) (o̶n̶/̶t̶h̶e̶/̶p̶e̶r̶s̶o̶n̶) described as follows: 339 Lawndale Drive, Winston-Salem, N.C. The residence in question will be the fifth house on the left on the east curb of Lawndale Drive past Hathaway Park and faces west. It is a one story wood frame structure green in color trimmed in white on a brick foundation. The numbers 339 appear to the right of the front door on right front side of house.

The applicant swears to the following facts to establish probable cause for the issuance of a search warrant: The applicant has been employed by the Forsyth County Sheriff's Department for over ten (10) years during which time has been assigned to the narcotics division and currently holds the rank of sergeant. During this time the applicant has been involved in numerous drug investigations, including joint investigations with the Winston Salem Police Department and the North Carolina State Bureau of Investigation. The applicant has also received extensive training in drug investigations by attending schools sponsored by Drug Enforcement Administration, the State of North Carolina Justice Academy, and local schools by our own department.

The applicant has received the following information from a reliable confidential source whose identity must remain confidential for reasons of their personal safety. The following is a list of facts given the applicant by this reliable confidential source (Source #1):

1. Within the past six (6) days this reliable confidential source has personally observed cocaine on the premises of 339 Lawndale Drive, Winston-Salem, N.C.

2. That Glenn Douglas Atwell and Beverly Sparks Atwell along with an infant daughter about three weeks old live at 339 Lawndale Drive. The applicant checked the public records which revealed that a baby girl was born on March 3, 1982 named Abby Rose with the parents being Mr. & Mrs. Glenn Douglas Atwell of 339 Lawndale Drive, Winston-Salem, N.C.

3. That the cocaine observed on the premises off 339 Lawndale Drive was in the controll of Glenn Atwell.

4. The description of the cocaine was that it was white and fluffy. Source #1 is familiar with the sight and appearance of cocaine and has seen нкcocaine on numerous occassions in the past with other people including at least one other occassion on the person of Glenn Douglas Atwell.

5. Accurate directions to 339 Lawndale Drive. The applicant personally verified this by Driving by the residence. Additionally Source #1 gave an accurate general physical description which the applicant personally verified.

6. That the phone number of 765-0258 in the name of Beverly Atwell at 339 Lawndale Drive. THis was personally looked up and found to be truthful by the applicant.

7. That Glenn Atwell is a licensed pilot. The applicant verified this fact by chekcing with Officer Larry Rose of the Winston-Salem Police Department Narcotics Division who has received this same information from his own reliable confidential sources.

8. That Beverly S. Atwell is a real estate agent for McNames-Sparks Reality Company of which Rose Sparks, Beverly Atwell's mother, is part owner. The applicant checked this and found it to be true from a Multiple Listing Service Publication (Beverly's employment).

9. The applicant also checked the power service record and found it to be listed to Rose Sparks.

A check of Department of Motor Vehicle Records, showed that the opearator's license of Glenn Douglas Atwell had the address of 339 Lawndale Drive, Winston-Salem as well as the registration of a 1981 Volvo with the same information (VYF-810, NC Tag). DMV records also showed a 1979m Chevrolet listed to both Beverly and Rose 3XSparkd of the same address of 339 Lawndale Drive, Winston-Salem, N.C.

The applicant talked with Larry Rose of the Narcotics Division of the Winston-Salem RMPolice Department. Detective Rose stated that on his independant investightions he has received information that Glenn Atwell is involved in cocaine drug traffic. Detective Rose's information comes from two reliable confidential sources (Source 2 and Source 3). Source 2 has provided Detective Rose with reliable and Accuarate information in the past which has lead to the arrest of at least two people for drug (cocaine) violations. Source 3 has provided Detective Rose with truthful information in the past concerning drug, especially cocaine, information. The applicant has verified m uch of Source 3's information for Detective Rose from his own reliable sources.

Detective Rose's investigation and information related in this applicant has been gathered complete independanily from the applicant. XIXX Also, Source 1, Source 2, and Source 3 have no knowledge of each's existance in providing inbormation. Much of Detettive Rose's information has been received within the past 30 days where as the applicant has been receiving his information longer than 30 days.

s/ E. B. HIATT, JR.
SIGNATURE OF APPLICANT

(Sworn this 26 day of March, 1982 at '713 (P.M.)

THIS EXECUTED SEARCH WARRANT WAS RETURNED TO ME ON 26 March, 1982 at 1043 (A.M.) (P.M.)

s/ (Illegible)
SIGNATURE OF DEPUTY CLERK OF
SUPERIOR COURT/JUDGE

We note that the first prong of the *Aguilar-Spinelli* test is met here. That is, sufficient underlying circumstances are stated

in the application to understand how the informant reached his conclusion. For example, the informant personally observed the cocaine at the defendant's house in the defendant's control within six days of the application. The informant was familiar with the sight and appearance of cocaine, having seen it on a number of occasions.

The specific objection raised by the defendant in his motion to suppress is that the application "fails to allege sufficient reasons to believe that the informant was credible or that his information was reliable." This contention goes to the second prong of the test.

The normal method for establishing the reliability of a confidential informant is to allege in the application for a warrant that the informant has given information in the past that led to an arrest or conviction. *See, e.g., State v. Hayes*, 291 N.C. 293, 230 S.E. 2d 146 (1976). It is not alleged that the informant here (Source #1) had given such information before this case.

But the Supreme Court has not held that past reliability is determinative in these cases. *See United States v. Harris*, 403 U.S. 573, 581-82 (1971). This Court, in *State v. Chapman*, 24 N.C. App. 462, 211 S.E. 2d 489 (1975), upheld a warrant issued upon an application containing information from a confidential informant who had not given any information before. *Chapman* persuades us here:

> We believe that when the detailed nature of the report and the fact that the officer swore that his informer was reliable are considered in a common sense and practical fashion, it would induce a prudent and disinterested magistrate to credit the report and conclude that the informant's information was reliable and not a causal [sic] rumor or a conclusory fabrication. In our opinion, the affidavit in the present case was sufficient to warrant a finding of probable cause to search the defendant's house.

24 N.C. App. at 467, 211 S.E. 2d at 493. *See also, State v. Ellington*, 18 N.C. App. 273, 196 S.E. 2d 629, *aff'd*, 284 N.C. 198, 200 S.E. 2d 177 (1973) (found detailed corroborating facts persuasive in establishing the informer's reliability).

The defendant also attacks the parts of the application that state what two other reliable confidential sources (sources 2 and 3) told Detective Larry Rose. The application said that Rose's information comes from two reliable confidential sources that have provided truthful drug information in the past, some of which led to arrests.

Although the information that Rose provides does not determine finally the validity of the application, we note that this Court has approved applications like this in the past. In *State v. Elam*, 19 N.C. App. 451, 199 S.E. 2d 45, *cert. denied*, 284 N.C. 256, 200 S.E. 2d 656 (1973), the Court approved an affidavit containing the following:

> Affiant further states the [sic] S/A B. M. Lea of the SBI advised him that the above named subject is dealer of marijuana. S/A Lea advised affiant that he had obtained this information from a confidential source of information who had given information in the past which led to the arrest and conviction of Rodney McCain. S/A Lea further stated to affiant that he believes his information to be true and accurate.

19 N.C. App. at 453, 199 S.E. 2d at 47. The affidavit in *Elam* is similar enough to the one before us to be persuasive here.

Because we find that the application met the *Aguilar-Spinelli* tests and other constitutional qualifications, we affirm the trial judge's denial of the motion to suppress. As the Supreme Court stated in *United States v. Ventresca*, 380 U.S. 102, 108 (1965):

> If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

Affirmed.

Chief Judge VAUGHN and Judge HEDRICK concur.