STATE OF NORTH CAROLINA v. JOSE MANUEL HERNANDEZ

No. COA04-849

(Filed 17 May 2005)

**1. Appeal and Error— preservation of issues—denial of motion to suppress—sufficiency of notice**

Defendant preserved for appeal after a guilty plea the denial of his motion to suppress evidence of cocaine found after a traffic stop. Defendant's motion to suppress explicitly stated a reser-

---

STATE v. HERNANDEZ

[170 N.C. App. 299 (2005)]

vation of the right to appeal, the hearing on this motion preceded the plea and oral notice of appeal by only one day, and neither the court nor the State indicated that it had not been notified of a potential appeal.

**2. Appeal and Error— denial of motion to suppress—scope and standards**

Appellate review of the denial of a motion to suppress is strictly limited to a determination of whether the findings are supported by competent evidence and whether the findings support the ultimate conclusion. However, the conclusions are reviewed de novo and must reflect a correct application of applicable legal principles.

**3. Criminal Law— denial of motion to dismiss—unsupported finding**

An unsupported finding concerning the odor of alcohol at a traffic stop did not affect the court's conclusions in denying defendant's motion to suppress cocaine seized at the stop, and the denial of the motion was not overturned.

**4. Search and Seizure— expanded traffic stop—probable cause and reasonable suspicion**

Defendant was not subjected to an unlawful seizure where a Highway Patrol Trooper saw him remove his seat belt while the vehicle was moving; stopped defendant to issue a citation; expanded the detention based on defendant's nervousness in the patrol car, his inconsistent answers to questions, and the officer's observation of a strong scent of air freshener in defendant's car; and cocaine was eventually found in defendant's car. The evidence supported the finding of an observed seat belt violation, which supported the conclusion that the Trooper had probable cause to stop the vehicle, and specific articulable facts supported the expansion of the detention.

**5. Search and Seizure— consent to search automobile—voluntary and knowing**

Defendant's consent to a search of his vehicle was voluntary under the totality of the circumstances where defendant was read a consent to search form, he understood English, he gave verbal and written consent to search, he understood his right to refuse consent, and he was free to leave.

STATE v. HERNANDEZ

[170 N.C. App. 299 (2005)]

Appeal by Defendant from order entered 13 May 2004 by Judge W. Russell Duke, Jr. in Superior Court, Pitt County. Heard in the Court of Appeals 12 April 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Martin T. McCracken, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Katherine Jane Allen, for the defendant-appellant.*

WYNN, Judge.

A law enforcement officer who observes a traffic law violation has probable cause to detain the motorist, and the scope of that detention may be expanded where the officer has a reasonable suspicion, based on specific and articulable facts, that criminal activity is afoot. *State v. McClendon,* 350 N.C. 630, 636, 517 S.E.2d 128, 132 (1999); *State v. Hamilton,* 125 N.C. App. 396, 399-400, 481 S.E.2d 98, 100, *disc. review denied,* 345 N.C. 757, 485 S.E.2d 302 (1997). Here, Defendant Jose Manuel Hernandez, who pled guilty to trafficking in cocaine, contends that he was illegally seized when a highway patrolman stopped him for a seat belt law infraction, and then asked him whether his vehicle contained contraband or weapons and whether he could search Defendant's vehicle. Because any seizure of Defendant that went beyond the scope of the initial lawful traffic stop was also lawful due to the patrolman's reasonable suspicion of criminal activity, we hold that Defendant was not unconstitutionally seized.

The record reflects that, on 29 January 2003, Trooper Jonathan Whitley of the North Carolina Highway Patrol was on routine patrol when Defendant pulled out in front of him. Defendant then made a left turn onto a side street, where he removed his seat belt while still driving. When Trooper Whitley noticed that Defendant had removed his seat belt, he initiated a stop. Highway Patrol Sergeant Brian Lisenby pulled in behind Trooper Whitley to observe the traffic stop. Trooper Whitley asked Defendant to have a seat in his patrol car while he issued a citation for the seat belt violation. While Defendant was seated next to Trooper Whitley in the front seat of his patrol car, Trooper Whitley noticed that Defendant was extremely nervous and that his heart was beating so hard his shirt was moving. Trooper Whitley asked Defendant where he was headed. Defendant responded that his tires needed air, so he had pulled up to the gas station where he was stopped. Defendant's tires appeared properly inflated to Trooper Whitley, so he again asked Defendant where he was headed,

and Defendant told him he was going to meet a friend. When Trooper Whitley pointed out the inconsistency in Defendant's responses, Defendant looked down at the floor and did not say anything further. Trooper Whitley also asked Defendant if he had any contraband or weapons in his vehicle and for consent to search his vehicle. Defendant gave verbal consent to the search. Trooper Whitley then asked Defendant to sign a form acknowledging his consent to the search. After Trooper Whitley read the form aloud to Defendant, he had Defendant read and sign the form.

Trooper Whitley advised Sergeant Lisenby that Defendant had consented to the search of his vehicle and asked Sergeant Lisenby to perform the search. Approximately six minutes elapsed between Defendant's being stopped and the vehicle search. Sergeant Lisenby almost immediately noticed a large bundle of paper towels in the center console of the vehicle. When he moved the paper towels to the side, he found a large white ball of powder. Sergeant Lisenby suspected the powder was cocaine and notified Trooper Whitley that he had located suspected contraband. Trooper Whitley then removed Defendant from the passenger side of the patrol car and placed him under arrest. As he was being handcuffed, Defendant exclaimed in English that someone had given him $250 to "just drop the [expletive] off and leave." After being read his Miranda rights, Defendant also stated his desire to make a deal and give Trooper Whitley "the big guy," to which Trooper Whitley replied that Defendant was under arrest and that he had no authority to make deals.

On 2 December 2003, Defendant filed a motion to suppress "[a]ll items seized from defendant's person, presence and vehicle, and all statements made by the defendant" pursuant to the stop and ensuing search. The motion also stated "[n]otice is given that defendant reserves the right to appeal if this motion is denied and there is a subsequent plea of guilty." On 16 February 2004, Defendant's motion was heard and denied by oral ruling. Defendant's attorney advised the trial court that Defendant had chosen to plead guilty to trafficking in cocaine, and that Defendant and the State had agreed beforehand that if Defendant's motion to suppress was denied, he would accept a plea. The parties returned the following day for a plea colloquy. Defendant's plea was accepted, and Defendant was ordered incarcerated for a term of seventy to eighty-four months, to be followed by deportation. Defendant appeals the trial court's denial of his motion to suppress.

**[1]** Preliminarily, we note that North Carolina General Statute section 15A-979(b) provides that "[a]n order finally denying a motion to suppress evidence may be reviewed upon an appeal from a judgment of conviction, including a judgment entered upon a plea of guilty." N.C. Gen. Stat. § 15A-979(b) (2004). Our Supreme Court has held that where a defendant intends to appeal from the denial of a suppression motion pursuant to this section, he must specifically give notice of his intention to the prosecutor and the court before plea negotiations are finalized. *State v. Tew*, 326 N.C. 732, 735, 392 S.E.2d 603, 605 (1990) (stating that "when a defendant intends to appeal from the denial of a suppression motion pursuant to this section, he must give notice of his intention to the prosecutor and to the court before plea negotiations are finalized; otherwise, he will waive the appeal of right provisions of the statute[]") (citing *State v. Reynolds*, 298 N.C. 380, 259 S.E.2d 843 (1979), *cert. denied*, 446 U.S. 941, 64 L. Ed. 2d 795 (1980)).

Here, the State alleges that "[i]n this case, defendant failed to notify the court, and arguably the prosecutor, that he was purportedly reserving his right to appeal the results of the suppression motion and has therefore waived his right to appeal this issue." We disagree.

Defendant's motion to suppress, one page of text, explicitly stated "[n]otice is given that defendant reserves the right to appeal if this motion is denied and there is a subsequent plea of guilty." The hearing on this motion preceded the plea colloquy, entry of judgment, and oral notice of appeal by only one day. Moreover, when Defendant gave notice of appeal in open court, neither the trial court nor the State indicated that they had not been notified of a potential appeal. Indeed, when the trial court stated that, in light of Defendant's appeal, it would enter more detailed written findings, the State responded "I think you were thorough yesterday[,]" when oral findings were made. Additionally, in its written order denying the suppression motion, the trial court made no findings indicating that Defendant failed to give notice of his reserving his right to appeal. *See State v. Atwell*, 62 N.C. App. 643, 303 S.E.2d 402 (1983) (the trial court made findings that the defendant had failed to give notice, but this Court found the record to be ambiguous and granted review). Because Defendant preserved the denial of his suppression motion for appeal, we now review this issue.

**[2]** "An appellate court accords great deference to the trial court's ruling on a motion to suppress because the trial court is entrusted with the duty to hear testimony (thereby observing the demeanor of

the witnesses) and to weigh and resolve any conflicts in the evidence." *State v. Johnston*, 115 N.C. App. 711, 713, 446 S.E.2d 135, 137 (1994) (citing *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) and *State v. Smith*, 278 N.C. 36, 41, 178 S.E.2d 597, 601, *cert. denied*, 403 U.S. 934, 29 L. Ed. 2d 715 (1971)). " 'Our review of a trial court's denial of a motion to suppress is strictly limited to a determination of whether it's [sic] findings are supported by competent evidence, and in turn, whether the findings support the trial court's ultimate conclusion.' " *State v. Reynolds*, 161 N.C. App. 144, 146-47, 587 S.E.2d 456, 458 (2003) (quoting *State v. Allison*, 148 N.C. App. 702, 704, 559 S.E.2d 828, 829 (2002)). However, the trial court's conclusions of law are reviewed *de novo* and must be legally correct. *State v. Fernandez*, 346 N.C. 1, 11, 484 S.E.2d 350, 357 (1997) ("[T]he trial court's conclusions of law must be legally correct, reflecting a correct application of applicable legal principles to the facts found.") (citing *State v. Payne*, 327 N.C. 194, 209, 394 S.E.2d 158, 166 (1990), *cert. denied*, 498 U.S. 1092, 112 L. Ed. 2d 1062 (1991)).

**[3]** Defendant first argues that the portion of the trial court's eighth finding of fact, stating "Trooper Whitley noticed a strong odor of alcohol[,]" is not supported by any competent evidence. We agree.

At the hearing on the suppression motion, Trooper Whitley was asked the following:

Q: And you didn't at any point smell any alcohol on [Defendant]?

A: No.

Q: Or form any opinion that he was impaired from alcohol?

A: No.

Q: And you didn't smell any marijuana on him or form an opinion that he was impaired from marijuana?

A: No, sir.

Trooper Whitley neither retracted this testimony nor offered conflicting testimony indicating that Defendant smelled of alcohol. There is, therefore, no competent evidence to support the trial court's finding that "Trooper Whitley noticed a strong odor of alcohol."

However, we disagree with Defendant's contention that because the trial court's conclusions of law are based on the findings of fact, including this finding that is not supported by competent evidence, the "unsupported finding of fact taints the conclusions of law and ren-

ders the judge's conclusions invalid." Defendant cites no authority for this contention, and this Court has previously held that an order "will not be disturbed because of . . . erroneous findings which do not affect the conclusions." *Black Horse Run Prop. Owners Assoc. v. Kaleel*, 88 N.C. App. 83, 86, 362 S.E.2d 619, 622 (1987) (citations omitted). Moreover, "irrelevant findings in a trial court's decision do not warrant a reversal of the trial court." *Goodson v. Goodson*, 145 N.C. App. 356, 360, 551 S.E.2d 200, 204 (2001) (citations omitted).

Here, as discussed in more detail below, the trial court's finding that "Trooper Whitley noticed a strong odor of alcohol[]" was not needed for the trial court to conclude, based on other supported findings of fact, that:

1. That Trooper Whitley had probable cause to stop the Defendant's vehicle.

2. That the Defendant understood English sufficiently well as to be able to knowingly, freely and voluntarily consent to a search of his vehicle.

3. That the Defendant did in fact knowingly, freely and voluntarily consent both orally and in writing to the search of his vehicle.

4. That the length of seizure was not too long as to be unconstitutional.

5. That the Defendant does not set forth grounds upon which relief can be granted in accordance with the General Statutes of North Carolina, the North Carolina Constitution, nor the United States Constitution.[1]

Moreover, the unsupported finding does not affect these conclusions. The trial court's order denying Defendant's suppression motion will therefore not be overturned on the basis of the unsupported finding.

[4] Defendant next argues that the trial court's conclusion that Defendant was not unconstitutionally seized is unsupported by the evidence and is erroneous as a matter of law. We disagree.

"The Fourth Amendment of the United States Constitution . . . protects 'the right of the people to be secure in their persons, houses,

1. The trial court made both oral and written findings and conclusions, and Defendant explicitly excepted to both the oral and written orders on his suppression motion. The finding that "Trooper Whitley noticed a strong odor of alcohol[]" was made only in the written order, which post-dated the oral ruling. We therefore look only to the effects of the unsupported written finding on the written conclusions.

papers, and effects, against unreasonable searches and seizures.'" *State v. Mitchell*, 358 N.C. 63, 72, 592 S.E.2d 543, 548-49 (2004) (quoting U.S. Const. amend. IV and citing N.C. Const. art. I, § 20 ("General warrants, whereby any officer or other person may be commanded to search suspected places without evidence of the act committed, or to seize any person or persons not named, whose offense is not particularly described and supported by evidence, are dangerous to liberty and shall not be granted.")).

However, "[t]he United States Supreme Court has recently held that the temporary detention of a motorist upon probable cause to believe that he has violated a traffic law is not inconsistent with the Fourth Amendment's prohibition against unreasonable seizures . . . ." *Hamilton*, 125 N.C. App. at 399, 481 S.E.2d at 100 (footnote omitted) (citing *Whren v. U.S.*, 517 U.S. 806, 135 L. Ed. 2d 89 (1996)). "Probable cause exists if 'the facts and circumstances within [the] knowledge [of the officer] were sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing the offense.'" *Id.* (quoting *State v. Streeter*, 283 N.C. 203, 207, 195 S.E.2d 502, 505 (1973)). "In North Carolina an officer may stop and issue a citation to any motorist who 'he has probable cause to believe has committed a misdemeanor or infraction.'" *Id.* at 400, 481 S.E.2d at 100 (quoting N.C. Gen. Stat. § 15A-302(b)). Moreover, in North Carolina

> Each front seat occupant who is 16 years of age or older and each driver of a passenger motor vehicle manufactured with seat belts shall have a seat belt properly fastened about his or her body at all times when the vehicle is in forward motion on a street or highway in this State.

N.C. Gen. Stat. § 20-135.2A(a) (2004). "Any driver or passenger who fails to wear a seat belt as required by this section shall have committed an infraction . . . ." N.C. Gen. Stat. § 20-135.2A(e) (2004); *Hamilton*, 125 N.C. App. at 400, 481 S.E.2d at 100.

Here, the trial court found, in its fifth written finding of fact, that "Trooper Whitley observed [Defendant] remove his seat belt while the vehicle was moving in a forward direction." This finding is supported by competent evidence, particularly Trooper Whitley's testimony that "[w]hen [Defendant's vehicle] made the left turn on Daughtry, I was directly behind the vehicle . . . and noticed that the driver removed his seat belt while on Daughtry Street, and then I initiated a traffic stop for the seat belt." The finding that Trooper Whitley saw Defendant

commit a seat belt law infraction supported the trial court's conclusion of law "[t]hat Trooper Whitley had probable cause to stop the Defendant's vehicle." *Hamilton*, 125 N.C. App. at 399-400, 481 S.E.2d at 100.

In a case with similar facts, *State v. Wilson*, 155 N.C. App. 89, 94-96, 574 S.E.2d 93, 97-99 (2002) , *disc. review denied*, 356 N.C. 693, 579 S.E.2d 98 (2003), a highway patrolman stopped the defendants for speeding and tailgating, asked the driver defendant to accompany him to his patrol car for issuance of the traffic citation, received permission to search the defendant's vehicle; and therein found cocaine. In *Wilson*, the driver defendant alleged that his detention was unconstitutional. This Court, however, disagreed, finding:

> Defendant Wilson's violation of Section 20-152(a) established the probable cause needed to initially stop the vehicle . . . . Once stopped, defendants were detained long enough for Trooper Mountain to ask Defendant Wilson questions about the vehicle and his travel plans, as well as check Defendant Wilson's license and the vehicle registration, both of which were out-of-state. While in the patrol car, Trooper Mountain observed that Defendant Wilson was extremely nervous. Once Trooper Mountain completed the required checks, he issued Defendant Wilson a warning ticket, and Wilson was free to leave. This process took approximately seven to eight minutes. Thus, these questions and actions were all reasonably related to Trooper Mountain's underlying justification of issuing a warning ticket.

*Id.* at 96, 574 S.E.2d at 98-99; *see also State v. McClendon*, 130 N.C. App. 368, 502 S.E.2d 902 (1998) (detention held constitutional where the defendant was stopped for a traffic law violation, the patrolman requested that the defendant accompany him to his patrol car, and the patrolman asked the defendant a moderate number of questions), *aff'd*, 350 N.C. at 636, 517 S.E.2d at 132 (1999); *State v. Morocco*, 99 N.C. App. 421, 393 S.E.2d 545 (1990) (finding, in the context of a traffic stop where the defendant claimed he was illegally detained in a patrol car while an officer prepared a consent-to-search form, that the defendant's detention was voluntary and in the spirit of cooperation and that the officer's polite conversation with the defendant during the stop was permissible).

Here as in *Wilson*, Trooper Whitley's detaining Defendant, requesting that Defendant accompany him to his patrol car, running

checks on Defendant's license and registration, issuing him a citation, and questioning Defendant during that time about his travel plans were reasonably related to the stop based on the seat belt infraction. Moreover, the length of Defendant's detention was approximately six minutes, *i.e.*, even shorter than the detention in *Wilson*. Further, the record reflects that, upon issuing the citation, Defendant was free to leave: When Trooper Whitley was asked "Did you, when he first sat down in the patrol car to have the ticket written, did you consider that he was free to walk away and leave at that point?" he responded "After I wrote him the seatbelt ticket he was." Moreover, in response to the question "Did you feel that you could leave at any moment if you wanted to?" Defendant testified "Yes, I felt free. I felt that way because my plates were, because the ticket was just for the, [sic] I did not felt [sic] I had any other problem."

While Trooper Whitley expanded the scope of Defendant's detention based on the seat belt law infraction, particularly by asking Defendant if his vehicle contained any contraband or weapons, the detention was still constitutional.

"Generally, 'the scope of the detention must be carefully tailored to its underlying justification.' " *McClendon*, 130 N.C. App. at 375, 502 S.E.2d at 906 (quoting *Morocco*, 99 N.C. App. at 427-28, 393 S.E.2d at 549). To expand the scope of a lawful detention, "an officer must have reasonable suspicion, based on specific and articulable facts, that criminal activity is afoot." *McClendon*, 350 N.C. at 636, 517 S.E.2d at 132 (citation omitted). The specific and articuable facts, and the rational inferences drawn from them, are to be "viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (citations omitted). In determining whether the further detention was reasonable, the court must consider the totality of the circumstances. *State v. Munoz*, 141 N.C. App. 675, 682, 541 S.E.2d 218, 222, *cert. denied*, 353 N.C. 454, 548 S.E.2d 534 (2001). Facts giving rise to a reasonable suspicion include nervousness, sweating, failing to make eye contact, conflicting statements, and strong odor of air freshener. *See, e.g.*, *McClendon*, 350 N.C. at 637, 517 S.E.2d at 133; *Wilson*, 155 N.C. App. at 96-97, 574 S.E.2d at 99. "After a lawful stop, an officer may ask the detainee questions in order to obtain information confirming or dispelling the officer's suspicions." *McClendon*, 350 N.C. at 636, 517 S.E.2d at 132-33 (citations omitted).

STATE v. HERNANDEZ

[170 N.C. App. 299 (2005)]

Here, specific articulable facts supporting a reasonable suspicion of criminal activity existed.[2] The trial court found that "Defendant was very nervous and Trooper Whitley could see the Defendant's shirt move as his heart was beating." This finding is supported by competent evidence, particularly Trooper Whitley's testimony that:

> [Defendant] was extremely nervous. He appeared to me to [sic] very nervous. When we talked he was looking around, his eyes darting, shifting. He wouldn't look directly at me. I also noticed his shirt was, his heart was beating and his shirt was moving. That seemed unusual to me, making a traffic stop or a seat belt [sic], people are generally not that nervous.

The trial court also found that "Trooper Whitley asked Defendant where he was going and the Defendant stated that his tire needed air. Based on Trooper Whitley's observations all tires looked inflated." This finding is supported by competent evidence, namely Trooper Whitley's testimony, indicating that Defendant gave Trooper Whitley conflicting statements:

> I just asked him what he was doing, where he was headed to. And he told me that his tires needed some air so he pulled up to the gas station. As I noticed his vehicle it didn't appear to me that either [sic] one of the four tires needed any air, they were all properly inflated. I started writing the citation out and asked him again where he was headed to. He told me that he was going to meet a friend. I said, 'Well, you just told me you were going to get some air in your tires.' At this point he just looked down at the floor and didn't say anything else to me.

Moreover, the trial court found that Trooper Whitley noticed Christmas tree air fresheners emanating a strong odor in Defendant's vehicle. This finding is supported by competent evidence: Trooper Whitley testified that "I noticed there were several of these Christmas trees, air fresheners in the vehicle. I noticed a strong odor coming from the vehicle."

---

2. We note that the trial court did not expressly conclude that a reasonable suspicion of criminal activity existed here. The trial court did, however, make a number of findings of fact, discussed below, that support such a conclusion, there is no material conflict in the evidence, and the trial court did conclude that Defendant's constitutional rights were not violated and that Defendant was not entitled to relief under North Carolina's General Statutes, or the North Carolina and United States Constitutions. Under these circumstances, an explicit conclusion as to the existence of reasonable suspicion was not necessary. Cf. Johnston, 115 N.C. App. at 714, 446 S.E.2d at 137 ("Where there is no material conflict in the evidence, findings and conclusions are not necessary . . . .") (quotation omitted).

STATE v. HERNANDEZ

[170 N.C. App. 299 (2005)]

In sum, because both probable cause and a reasonable suspicion existed here, the trial court did not err in concluding that Defendant was not subject to an unlawful seizure and was not entitled to relief under the North Carolina or United States Constitutions.

[5] Defendant next contends that the trial court's conclusion of law that Defendant consented to the search of his vehicle is not supported by the evidence and is erroneous as a matter of law. We disagree.

> The consent needed to justify a [vehicle] search may be given by the "person in apparent control of [a vehicle's] operation and contents at the time the consent is given." N.C. Gen. Stat. § 15A-222 (2001). When seeking to rely on the consent given to support the validity of a search, the State has "the burden of proving that the consent was voluntary." *State v. Morocco*, 99 N.C. App. at 429, 393 S.E.2d at 549. In determining whether this burden has been met, the court must look at the totality of the circumstances. *State v. Steen*, 352 N.C. 227, 240, 536 S.E.2d 1, 9 (2000), *cert. denied*, 531 U.S. 1167, 148 L. Ed. 2d 997 (2001).

*Wilson*, 155 N.C. App. at 97, 574 S.E.2d at 99. "At a hearing to determine the voluntariness of a defendant's consent to a search of his property, the weight to be given the evidence is peculiarly a determination for the trial court, and its findings are conclusive when supported by competent evidence." *State v. Aubin*, 100 N.C. App. 628, 633, 397 S.E.2d 653, 656 (1990) (citing *State v. Long*, 293 N.C. 286, 237 S.E.2d 728 (1977) and *State v. Fincher*, 309 N.C. 1, 305 S.E.2d 685 (1983)), *disc. review denied*, 328 N.C. 334, 402 S.E.2d 433, *cert. denied*, 502 U.S. 842, 116 L. Ed. 2d 101 (1991).

Here, the trial court found that "Defendant was read a 'consent to search' form. The Defendant understood English and gave verbal and written consent to search his vehicle." The trial court also found that

> The Defendant gave a verbal and written consent to search, after the Defendant was read the consent to search by the State Highway Patrolman. The Defendant then signed the Consent to Search and it was the officer's impression that Defendant understood English.

> The Defendant testified and the Court finds that the Defendant understood his rights not to consent to the search and that the Defendant felt that he was "free to leave" after the citation had been written."

. . . The Court finds that the consent to search was given understandingly and voluntarily and freely given [sic].

These findings are supported by competent evidence, particularly Trooper Whitley's testimony that:

I then asked [Defendant] for consent to search his vehicle, and [Defendant] gave me verbal and written consent to search his vehicle.

Q: Did you in fact get a written consent to search?

A: I did.

* * *

Q: Did you tell Mr. Hernandez that you wanted to search his vehicle?

A: Yes, ma'am. I asked him could I search his vehicle.

Q: What did he say?

A: He said okay.

Q: And then you subsequently asked him to sign this consent to search his vehicle, is that correct?

A: Actually I read it to him out loud and then I handed it to him. I said 'It is okay now for me to look in your vehicle?' He said 'That's okay.' I asked him, 'Will you sign?' and he did.

Q: And he appeared to understand what you were saying to him?

A Yes, ma'am.

Q: Did he ever tell you he didn't speak English and that he needed an interpreter?

A: He never told me that.

* * *

COURT: Were you speaking English?

A: Yes, sir.

COURT: He understood it?

A: Yes, sir.

There was also competent evidence that, upon the issuance of the citation, Defendant was free to leave: When Trooper Whitley was asked "Did you, when he first sat down in the patrol car to have the

ticket written, did you consider that he was free to walk away and leave at that point?" he responded "After I wrote him the seat-belt ticket he was." In response to the question "Did you feel that you could leave at any moment if you wanted to?" Defendant testi-fied "Yes, I felt free. I felt that way because my plates were, be-cause the ticket was just for the, [sic] I did not felt [sic] I had any other problem."

The trial court's findings, which are supported by competent evidence, in turn support the trial court's conclusions that: "the Defendant understood English sufficiently well as to be able to knowingly, freely and voluntarily consent to a search of his ve-hicle[,]" and "the Defendant did in fact knowingly, freely and volun-tarily consent both orally and in writing to the search of his vehicle." The State therefore met its burden of proving that Defendant's con-sent to the search of his vehicle was voluntary under the totality of the circumstances.

For the reasons stated herein, we affirm the order of the trial court.

Affirmed.

Judges TYSON and ELMORE concur.