STATE OF NORTH CAROLINA v. DARIEN FISHER

No. COA11-980

(Filed 20 March 2012)

**Search and Seizure—vehicle search—detention after warning ticket—reasonable suspicion**

The trial court erred in a possession of marijuana case by granting defendant's motion to suppress the search of the vehicle he was driving. Based on the totality of the circumstances, including defendant's nervousness, the smell of air freshener in the car, inconsistency with regard to travel plans, and driving a car not registered to defendant, the police officer had reasonable suspi-

STATE v. FISHER

[219 N.C. App. 498 (2012)]

cion to detain defendant while awaiting a canine unit's arrival after issuing a warning ticket for a seat belt violation.

Appeal by the State from order entered 3 February 2011 by Judge Arnold O. Jones, II in Wayne County Superior Court. Heard in the Court of Appeals 10 January 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Derrick C. Mertz, for the State.*

*Parish & Cooke, by James R. Parish, for defendant-appellee.*

HUNTER, Robert C., Judge.

The State appeals from the trial court's 3 February 2011 order granting defendant Darien Fisher's motion to suppress the search of his vehicle. After careful review, we reverse and remand.

### Background

On 9 February 2010, Sergeant Mike Cox, a drug investigator with the Wayne County Police Department, was driving an unmarked police car on Highway 70 West when he observed defendant driving without wearing his seatbelt. According to Sergeant Cox, defendant was driving in a "pack of traffic" traveling approximately 70 miles per hour. Defendant "was very diligent in his driving, looking straight ahead, [and] had both hands on the wheel[.]" Sergeant Cox stated that, when combined with other circumstances, a person driving in the "flow of traffic" is suspicious.

Sergeant Cox followed defendant for about three miles, during which time he noticed that the tag number on the vehicle did not match the tag numbers that are typically issued by the Goldsboro Department of Motor Vehicles. He then ran the tag number, which established that the car was registered to an elderly woman from Bayboro, North Carolina. Sergeant Cox stated:

> 90 percent of my drug seizures come from third party vehicles, meaning that the person driving the vehicle is not the registered owner of the vehicle; they tend to use vehicles that are registered to third parties, so it is not linking them to the vehicle, No. 1, and No. 2, it wouldn't show that they're maintaining the vehicle, and No. 3, . . . it would be . . . harder to seize the vehicle and forfeit it under the state law for maintaining the vehicle.

Sergeant Cox also noticed that there was a hand print on the trunk of the vehicle, which was otherwise dirty, indicating that something had recently been placed in the trunk. He stated that this fact was another indicator that defendant was a drug courier. Sergeant Cox executed the traffic stop for the seatbelt violation.

Upon approaching the car, Sergeant Cox noticed a strong odor of air freshener, which he stated was often a sign that someone was involved in transporting drugs. Defendant claimed that he was traveling to Bayboro after a shopping trip to a mall in Smithfield, North Carolina. Sergeant Cox became suspicious because defendant had purportedly traveled over two hours to go shopping, yet there were no bags in the car that he could observe. Defendant claimed that he went to the mall to shop for clothes, but nothing fit him.

Sergeant Cox also found it suspicious that defendant never asked him why he had been stopped. He stated that usually someone had something to hide if he was not concerned with why he had been stopped. Additionally, Sergeant Cox noticed that defendant had a fast food bag in his car, which he stated is not suspicious in and of itself, but combined with other circumstances it is an indicator that the person is in a hurry and does not want to leave their car unattended.

At that time, defendant had been stopped for approximately five to six minutes. Sergeant Cox called for a canine unit due to his belief that defendant was transporting drugs. Sergeant Cox approached defendant and told him that he would be given a warning ticket for driving without a seatbelt and that he believed defendant was transporting contraband. Defendant refused to consent to a search of his vehicle and denied that he had any pending drug charges. Sergeant Cox chose to detain defendant until the canine unit arrived. While waiting for the unit, Sergeant Cox called the Pamlico County Sheriff's Department and spoke with a narcotics officer who told Sergeant Cox that defendant was a known marijuana and cocaine distributor with pending drug charges. According to Sergeant Cox, defendant was very nervous throughout the encounter, even after being told that he was only going to receive a warning.

It took approximately 20 to 25 minutes for the canine unit to arrive. Emmy, the drug detection dog, signaled to the officers that there were drugs in defendant's car. The officers searched the car and discovered two pounds of marijuana in the trunk. Defendant was charged with one count of possession with intent to sell and deliver a controlled substance, and one count of keeping and maintaining

a motor vehicle for the use of controlled substances. Defendant moved to suppress the search of his vehicle. On 3 February 2011, the trial court granted defendant's motion. The State timely appealed to this Court.

## Discussion

Here, the parties do not dispute the trial court's determination that the stop of defendant's vehicle was justified due to the seatbelt infraction. The State and defendant agree that the sole issue on appeal is whether Sergeant Cox had reasonable suspicion to detain defendant while awaiting the canine unit's arrival.

It is well established that

> the scope of appellate review of an order such as this is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law.

*State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). The State in the present case has not challenged any of the trial court's findings of fact, and, therefore, they are binding on appeal. *Id.* "The trial court's conclusions of law, however, are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

The Fourth Amendment to the federal constitution provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. "[T]he Fourth Amendment does not give rise to a legitimate expectation of privacy in possessing contraband or illegal drugs, and as such, a well-trained dog that alerts solely to the presence of contraband during a walk around a car at a routine traffic stop 'does not rise to the level of a constitutionally cognizable infringement.' " *State v. Branch*, 177 N.C. App. 104, 107, 627 S.E.2d 506, 508 (quoting *Illinois v. Caballes*, 543 U.S. 405, 409, 160 L. Ed. 2d 842, 847 (2005)), *cert. and disc. review denied*, 360 N.C. 537, 634 S.E.2d 220 (2006). "However, in order to further detain a suspect from the time the warning ticket is issued until the time the canine unit arrives, there must be 'reasonable suspicion, based on specific and articulable facts, that criminal activity is afoot.' " *State v. Euceda-Valle*, 182 N.C. App. 268, 274, 641 S.E.2d 858, 863 (quoting *State v. McClendon*, 350 N.C. 630, 636, 517

S.E.2d 128, 132 (1999)), *disc. review denied*, 361 N.C. 698, 652 S.E.2d 923 (2007). "The specific and articulable facts, and the rational inferences drawn from them, are to be 'viewed through the eyes of a reasonable, cautious officer, guided by his experience and training.'" *State v. Hernandez*, 170 N.C. App. 299, 308, 612 S.E.2d 420, 426 (2005) (quoting *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994)). "In determining whether the further detention was reasonable, the court must consider the totality of the circumstances." *Id.* Reasonable suspicion only requires "a minimal level of objective justification, something more than an 'unparticularized suspicion or hunch.'" *Watkins*, 337 N.C. at 442, 446 S.E.2d at 70 (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989)). We emphasis that because the "reasonable suspicion standard is a commonsensical proposition, '[c]ourts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the street.'" *United States v. Foreman*, 369 F.3d 776, 782 (4th Cir. 2004) (quoting *United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993)).

The trial court in this case issued oral findings of fact detailing Sergeant Cox's observations as set forth in his testimony. The trial court concluded:

> In this case I do not find that there is articulable reason for the search. I find that the stop, in itself, was justified, but that there are not enough factors after the stop to continue with the detention of this defendant absent a search warrant. He did not give his consent. I find that his Fourth Amendment rights were violated.

Consequently, the only issue that is to be decided by this Court is whether the trial court erred in concluding that Sergeant Cox lacked reasonable suspicion to detain defendant beyond the scope of a routine traffic stop, thereby violating defendant's Fourth Amendment rights.

The State argues on appeal that the following factors established that Sergeant Cox had a reasonable suspicion that defendant was transporting contraband: (1) there was an overwhelming odor of air freshener coming from the car; (2) defendant's claim that he made a five hour round trip to go shopping but had not purchased anything; (3) defendant's nervousness; (4) defendant had pending drug related charges and was known as a distributor of marijuana and cocaine in another county; (5) defendant was driving in a pack of cars; (6) defend-

ant was driving a car registered to someone else; (7) defendant never asked why he had been stopped; (8) defendant was "eating on the go"; and (9) there was a handprint on the trunk indicating that something had recently been placed in the trunk.

As a preliminary matter, we recognize that Officer Cox did not know that defendant had pending drug charges in another county until after the canine unit was called; however, when reviewing the totality of the circumstances, we are still permitted to take this factor into account. *See Euceda-Valle*, 182 N.C. App. at 274, 641 S.E.2d at 863 ("[I]n order to further detain a suspect *from the time the warning ticket is issued until the time the canine unit arrives*, there must be reasonable suspicion[.]" (emphasis added) (citation and quotation marks omitted)). Granted, reasonable suspicion must exist at the moment the officer decides to detain the defendant beyond the issuing of the citation, *State v. Bell*, 156 N.C. App. 350, 354, 576 S.E.2d 695, 698 (2003) ("To determine reasonable articulable suspicion, courts view the facts through the eyes of a reasonable, cautious officer, . . . *at the time he determined to detain defendant."* (emphasis added) (citation and quotation marks omitted)); however, that does not mean that all other factors that arise during the detention should not be considered in the court's analysis. The extended detention of defendant is ongoing from the time of the traffic citation until the canine unit arrives and additional factors that present themselves during that time are relevant to why the detention continued until the canine unit arrived. Here, Officer Cox decided to call the canine unit before he knew of defendant's pending drug charges, but once he acquired that information shortly after calling for the canine unit, it became a factor in his decision to continue the detention until the canine unit arrived.

While none of the factors listed by the State standing alone would give rise to a reasonable suspicion viewed through the eyes of Sergeant Cox, we must examine whether these factors, taken in combination, were sufficient to establish reasonable suspicion. This Court has acknowledged that "[f]acts giving rise to a reasonable suspicion include nervousness, sweating, failing to make eye contact, conflicting statements, and strong odor of air freshener." *Hernandez*, 170 N.C. App. at 308, 612 S.E.2d at 426. In *Euceda-Valle*, 182 N.C. App. at 274, 641 S.E.2d at 863, this Court held that "the trial court's findings of fact support its legal conclusion that law enforcement had a reasonable suspicion necessary to conduct the exterior canine sniff of the vehicle." The Court reasoned that the following findings of fact

supported the trial court's conclusion: "Defendant was extremely nervous and refused to make eye contact with the officer. In addition, there was smell of air freshener coming from the vehicle, and the vehicle was not registered to the occupants. And there was disagreement between defendant and the passenger about the trip to Virginia." *Id.* at 274-75, 641 S.E.2d at 863. In *McClendon*, 350 N.C. at 637, 517 S.E.2d at 133, this Court held that inconsistent statements by defendant concerning who owned the vehicle, coupled with his extremely nervous behavior, were sufficient to establish reasonable suspicion. In *State v. Briggs*, 140 N.C. App. 484, 493-94, 536 S.E.2d 858, 863-64 (2000), this Court held that reasonable suspicion existed where the officer knew that the defendant was on probation, the defendant's eyes were red and glassy, and the officer smelled burnt cigars in the vehicle, which he knew were typically used to cover the odor of contraband. Similar, albeit not identical, factors exist in the present case as those seen in *Euceda-Valle*, *McClendon*, and *Briggs*.

We recognize that several of the factors listed by the State in this case can easily be construed as innocent behavior, but "[i]t must be rare indeed that an officer observes behavior consistent *only* with guilt and incapable of innocent interpretation." *United States v. Price*, 599 F.2d 494, 502 (2nd Cir. 1979); *see United States v. Sokolow*, 490 U.S. 1, 9, 104 L. Ed. 2d 1, 11 (1989) ("Any one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion."). Even assuming, *arguendo*, that such "innocent" behavior as defendant's driving in the flow of traffic, the hand print on the trunk, and the fast food bag, were not proper factors to consider, multiple other factors existed that have been specifically identified by our caselaw as appropriate factors to consider in a reasonable suspicion analysis. As stated *supra*, these factors include nervousness, the smell of air freshener, inconsistency with regard to travel plans, *Hernandez*, 170 N.C. App. at 308, 612 S.E.2d at 426, and driving a car not registered to the defendant, *Euceda-Valle*, 182 N.C. App. 274-75, 641 S.E.2d at 863. These factors were present in this case and were sufficient to establish the reasonable suspicion necessary for Officer Cox to detain defendant beyond the time necessary to issue the warning citation. Moreover, defendant's pending drug charges is a factor to be considered in the continued detention of defendant while awaiting the canine unit. *See State v. Branch*, 162 N.C. App. 707, 712-13, 591 S.E.2d 923, 926 (2004) ("[I]t is proper for an officer's prior knowledge of a defendant, combined with present

observations and not taken alone, to constitute a reasonable suspicion justifying further investigation."), *rev'd on other grounds*, 546 U.S. 931, 163 L. Ed. 2d 314 (2005).

Based on the totality of the circumstances, we hold that the trial court erred in concluding that reasonable suspicion did not exist and that defendant's Fourth Amendment rights were violated. Consequently, we reverse and remand this case for further proceedings not inconsistent with this opinion.

Reversed and Remanded.

Judges THIGPEN and McCULLOUGH concur.