STATE OF NORTH CAROLINA v. ANTONE LAMONT BELL

No. COA02-425

(Filed 4 March 2003)

**1. Search and Seizure— traffic stop—motion to suppress—motion to dismiss—reasonable articulable suspicion**

The trial court did not err in a possession of drug paraphernalia, possession with intent to sell and deliver cocaine, trafficking cocaine by possession, and trafficking cocaine by transport case by denying defendant's motions to dismiss and to suppress evidence seized by officers in a rental vehicle registered in the name of defendant after the vehicle in which defendant was a passenger was stopped for speeding in a work zone, because: (1) both officers testified that defendant voluntarily consented to a search of the vehicle and that consent was never withdrawn; and (2) the officers had reasonable and articulable suspicion of possible criminal activity based on the stories of the two males in the car being directly in conflict, the back seat of the car being filled with personal belongings, defendant's resistance of eye contact, and the specific experience and training of the officers relating to drug cases.

**2. Criminal Law— arraignment—dismissal with leave—procedural calendaring device**

The trial court did not commit plain error in a possession of drug paraphernalia, possession with intent to sell and deliver cocaine, trafficking cocaine by possession, and trafficking cocaine by transport case by permitting defendant to be tried on charges that had been dismissed with leave at the time of defendant's arraignment, because: (1) N.C.G.S. § 15A-932(b) provides that dismissal with leave results in removal of the case from the court's docket, but the criminal proceeding under the indictment is not terminated; (2) defendant was not prejudiced by the procedural calendaring device intended not to suspend or hamper prosecution of a case, but intended to facilitate its con-

STATE v. BELL

[156 N.C. App. 350 (2003)]

tinuance during a period of time when a defendant is absent; and (3) N.C.G.S. § 15A-932(d) which provides for reinstatement of an indictment after a dismissal with leave is taken is not jurisdictional in nature, nor does failure to strictly comply with its requirements result in the failure of the pleading to charge an offense.

Appeal by defendant from judgments entered 25 October 2001 by Judge D. Jack Hooks, Jr. in Robeson County Superior Court. Heard in the Court of Appeals 9 January 2003.

*Attorney General Roy Cooper, by Special Deputy Attorney General J. Allen Jernigan, for the State.*

*William B. Gibson, for defendant-appellant.*

CALABRIA, Judge.

On 4 April 1998, at approximately 5:45 a.m., State Trooper Jim Knotts ("Officer Knotts") stopped a white Pontiac Grand Am proceeding southbound on I-95 for traveling 73 mph in a work zone that had a posted speed limit of 55 mph. Two males were in the vehicle, Christopher Bell ("Christopher") in the driver's seat of the Pontiac and his brother, Antone Lamont Bell ("defendant"), in the front passenger's seat. Numerous personal belongings filled the back seat of the vehicle. State Trooper Robert Reeves ("Officer Reeves") drove by, and Officer Knotts asked him for assistance with the stop. When Christopher offered a New York learner's permit along with a rental car agreement for the Pontiac, Officer Knotts asked Christopher to accompany him back to the patrol car to check the tag and permit. Officer Knotts issued Christopher a citation for speeding in a work zone and returned his learner's permit.

Meanwhile, Officer Reeves, at the request of Officer Knotts, questioned defendant, who was alone in the Pontiac. Defendant stated he was moving to Georgia and his brother was coming along to attend a funeral for a male cousin who died of a heart attack. Christopher told Officer Knotts they were going to Georgia for a funeral for an aunt who died of diabetes and that his brother was planning to stay in Georgia for one month. Officer Reeves noted that, as they conversed, defendant's eyes wandered.

Upon considering that the back seat was filled with personal belongings, including stereo equipment, indicating that the trunk was

full, and that the men told inconsistent stories, Officer Knotts became suspicious of the possible involvement of drugs. His suspicions were based on his past experiences as well as police training in drug intervention. Officer Knotts asked Officer Reeves to request defendant's consent to search the vehicle since defendant's name appeared on the rental agreement for the Pontiac.

Officer Reeves testified that defendant understood what it meant to search the vehicle and freely consented to the search. Defendant testified that he refused to give consent to search the vehicle until Officer Reeves threatened to impound it and get a search warrant.

When Officer Reeves searched the trunk of the vehicle, he found several plastic bags that contained clothes, additional stereo components, and a wooden box resembling a speaker. The wooden box did not match the other speakers and no wires were attached to it. When Officer Reeves noticed the screws on the speaker appeared to have been recently turned, he became increasingly suspicious and removed the panel on the box. Wrapped in a blue towel were 742.8 grams of cocaine. Defendant stated that the drugs belonged to him.

Defendant was indicted by a grand jury in Robeson County on 14 December 1998 for possession of drug paraphernalia in violation of N.C. Gen. Stat. § 90-113.22 (2001), possession with intent to sell and deliver cocaine in violation of N.C. Gen. Stat. § 90-95 (2001), trafficking [more than 400 grams of] cocaine by possession in violation of N.C. Gen. Stat. § 90-95(h) (2001), and trafficking [more than 400 grams of] cocaine by transport in violation of N.C. Gen. Stat. § 90-95(h) (2001). Defendant pled not guilty to all charges.

Testimony at both the suppression hearing and trial conflicted as to whether defendant was speeding, whether Officer Reeves threatened to impound the vehicle and get a search warrant, whether the answers given by defendant and Christopher differed, and, whether consent was procured. The trial court denied defendant's motion to suppress the evidence from the search of the vehicle, finding in relevant part: (1) defendant was observed traveling through an area posted 55 mph at a speed registering 73 mph on Officer Knotts' radar; (2) defendant's answers to Officer Reeves' questions differed significantly from those provided by Christopher; (3) Officer Reeves asked defendant for consent to search the vehicle; and (4) defendant did freely and voluntarily consent to a search of the vehicle. This case came to trial in the Superior Court of Robeson County, during the 22

October 2001 session, the Honorable Judge D. Jack Hooks, Jr. presiding. The jury returned a verdict of guilty on all four charged offenses on 25 October 2001. Defendant appeals.

Defendant asserts the trial court erred by: (I) denying defendant's motion to suppress; (II) denying defendant's motion to dismiss; and (III) permitting defendant to be tried despite the fact that the cases against defendant had been dismissed with leave at the time of the arraignment.

I. Motion to Suppress

[1] Defendant first assigns error to the denial of the motion to suppress evidence seized by law enforcement officers on the grounds that the officers violated defendant's rights to be free from unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 20 of the North Carolina Constitution.

"[T]he scope of appellate review of an order [concerning suppression of evidence] is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) (citations omitted).

> [G]reat deference [is given to the trial court] because it is entrusted with the duty to hear testimony, weigh and resolve any conflicts in the evidence, find the facts, and, then based upon those findings, render a legal decision, in the first instance, as to whether or not a constitutional violation of some kind has occurred.

*Cooke*, 306 N.C. at 134, 291 S.E.2d at 619-20. "The appellate court is much less favored because it sees only a cold, written record. Hence the findings of the trial judge are, and properly should be, conclusive on appeal if they are supported by the evidence." *State v. Smith*, 278 N.C. 36, 41, 178 S.E.2d 597, 601 (1971).

Despite evidentiary conflict on the issues of the vehicle's speed, statements concerning impounding the vehicle, inconsistent information procured during questions, and consent, the trial court found in favor of the State on each of these matters. Specifically, the trial court found as fact that "Mr. Antone Lamont Bell, did freely, volun-

tarily, consent to a search of the vehicle . . . [and] there were no threats made or coercion, no use of force."

The trial court's findings are supported by competent evidence. Both officers testified that defendant voluntarily consented to a search of the Pontiac. Both officers stated that defendant was very cooperative in granting consent and that defendant had not been drinking. Officer Reeves further testified that consent was never withdrawn. Defendant testified that he had not been drinking, had finished high school, and had two or three semesters of college studies. The trial court considered the evidence and found that defendant lawfully consented; this finding is supported by the evidence. Since the trial court determined the search was consensual, the trial court correctly concluded that the motion to suppress should be denied.

Defendant asserts that even if the search was consensual, the consent is ineffective because it was given after the speeding citation was issued. "Once the original purpose of the stop has been addressed, there must be grounds which provide a reasonable and articulable suspicion in order to justify further delay." *State v. Falana*, 129 N.C. App. 813, 816, 501 S.E.2d 358, 360 (1998) (citing *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968)). The State asserts that even if, as defendant asserts, the traffic stop had concluded, the detention here was justified because the officers possessed reasonable and articulable suspicion of criminal activity. We agree.

To determine reasonable articulable suspicion, courts "view the facts 'through the eyes of a reasonable, cautious officer, guided by his experience and training' at the time he determined to detain defendant." *State v. Munoz*, 141 N.C. App. 675, 682, 541 S.E.2d 218, 222 (2001) (citations omitted). Recently, our Supreme Court dealt with the issue of detention after a ticket had been issued in a case where the defendant was held for an additional 15-20 minutes until a canine unit arrived. *State v. McClendon*, 350 N.C. 630, 517 S.E.2d 128 (1999). Reasonable, articulable suspicion justifying the detention was found because the defendant could not produce the registration for the vehicle, provided inconsistent information as to whose vehicle he was driving and where he lived, gave vague travel information and acted nervous. *Id.* In *McClendon*, as in the present case, there were particularized objective factors that caused the officers, based on their experience and training, to suspect illegal activity.

Officer Reeves had been a State Trooper at the time of this incident for approximately five years. During his career, he had previously found drugs in stereo equipment. Officer Knotts had been a State Trooper for over seven years and testified as to his personal involvement in numerous drug cases arising from vehicle stops. His prior experience prompted him to be suspicious of people with inconsistent stories, back seats full of personal belongings (thereby indicating that the trunk might be full), and indirect eye contact. Here, because the stories were directly in conflict, the back seat was filled with personal belongings, and defendant resisted eye contact, the officers were alerted to possible criminal activity. These factors, coupled with the specific experience and training of the officers at the scene, gave rise to reasonable, articulable suspicion.

Accordingly, this assignment of error is overruled.

## II. Motion to Dismiss

Defendant's appeal concerning the Motion to Dismiss is predicated upon our finding that the Motion to Suppress should have been granted. Accordingly, this assignment of error is overruled.

## III. Due Process Claim

[2] Finally, defendant assigns plain error to the trial court's decision to permit defendant to be tried on charges that had been dismissed with leave at the time of his arraignment. Defendant failed to object on these grounds at trial. "In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. App. R. 10(b)(1) (2003).

> In criminal cases, a question which was not preserved by objection noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error.

N.C. App. R. 10(c)(4) (2003). Plain error is " '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done . . . grave error which amounts to a denial of a fundamental right . . . a miscarriage of justice or . . . the denial to appellant of a fair trial[.]' " *State v. Odom*, 307 N.C. 655, 660, 300

S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)) (emphasis in original).

Defendant argues deprivation of statutory rights under N.C. Gen. Stat. §§ 15A-932 and 941 and his constitutional rights to due process of law under the Fifth and Fourteenth Amendments. North Carolina General Statute § 15A-932(b) (2001) provides:

> Dismissal with leave for nonappearance or pursuant to a deferred prosecution agreement results in removal of the case from the docket of the court, but all process outstanding retains its validity, and all necessary actions to apprehend the defendant, investigate the case, or otherwise further its prosecution may be taken, including the issuance of non-testimonial identification orders, search warrants, new process, initiation of extradition proceedings, and the like.

"Under subsection (b) . . . dismissal [with leave] results in removal of the case from the court's docket, but the criminal proceeding under the indictment is *not* terminated." *State v. Lamb*, 321 N.C. 633, 641, 365 S.E.2d 600, 604 (1988) (emphasis in original). This procedure is used by a prosecutor when a defendant "[f]ails to appear at a criminal proceeding at which his attendance is required, and the prosecutor believes the defendant cannot be readily found." N.C. Gen. Stat. § 15A-932(a)(2) (2001). "[A] prosecutor may reinstate the proceedings by filing written notice with the clerk." N.C. Gen. Stat. § 15A-932(d) (2001). Our Supreme Court has characterized dismissal with leave as a "procedural calendaring device." *State v. Patterson*, 332 N.C. 409, 421, 420 S.E.2d 98, 105 (1992). Moreover, our Supreme Court held that failure to conduct a formal arraignment altogether, where the defendant was fully aware of the charges against him, was not reversible error. *State v. Smith*, 300 N.C. 761, 265 S.E.2d 164 (1980) (citing *State v. McCotter*, 288 N.C. 227, 217 S.E.2d 525 (1975)).

Defendant was not prejudiced by this "procedural calendaring device" intended not to suspend or hamper prosecution of a case, but rather to facilitate its continuance during a period of time when a defendant is absent. Accordingly, we hold that arraigning defendant, who was fully aware of the charges against him, though the charges had been dismissed with leave and had not yet been reinstated, does not amount to the denial of a fair trial; therefore, we find no plain error.

SWAIN v. PRESTON FALLS E., L.L.C.

[156 N.C. App. 357 (2003)]

Defendant argues, alternatively, that a defective arraignment gives rise to a jurisdictional defect challengeable at any time under N.C. Gen. Stat. § 15A-952(d) (2001). "N.C.G.S. § 15A-932(d), which provides for reinstatement of an indictment after a dismissal with leave is taken, is not 'jurisdictional' in nature, nor does failure to strictly comply with its requirements result in the 'failure of the pleading to charge an offense' within the meaning of N.C.G.S. § 15A-952(d)." *Patterson*, 332 N.C. at 421-22, 420 S.E.2d at 105.. Accordingly, this assignment of error is overruled.

No error.

Judges McGEE and HUNTER concur.