GEER, Judge.
 

 *314
 
 Defendant Constance Renea Bedient pled guilty to possession of a schedule II controlled substance. On appeal, defendant argues that the trial court erred in denying her
 
 *321
 
 motion to suppress evidence uncovered after she gave consent to search her car. She contends that the trial court erred in concluding that the investigating officer had reasonable suspicion to continue questioning her after addressing the initial purposes of the stop and in concluding that she voluntarily consented to additional questioning after the conclusion of the stop. Upon our comparison of the record to the trial court's findings of fact regarding the circumstances that gave rise to reasonable suspicion, we find only two circumstances are supported by the officer's testimony: defendant was engaging in nervous behavior and she had associated with a known drug dealer.
 
 *315
 
 We hold that these circumstances are insufficient to support the conclusion that the officer had reasonable suspicion to prolong defendant's detention once the purpose of the stop had concluded. Because defendant gave consent to a search during an unlawful detention, we reverse the denial of defendant's motion to suppress.
 

 Facts
 

 The State's evidence at the motion to suppress hearing tended to show the following facts. At around 11:30 p.m. on 28 February 2013, Sergeant Andy Parker of the Jackson County Sheriff's Office observed defendant driving a silver Mitsubishi Gallant on Highway 107 with her high beam lights on. She failed to dim her high beams as she passed Sergeant Parker going in the opposite direction. Sergeant Parker initiated a traffic stop, and defendant pulled to the side of the road. A dashboard video camera in Sergeant Parker's patrol car recorded the subsequent stop.
 

 When Sergeant Parker approached the driver side door, defendant immediately acknowledged she was driving with her high beams on and was doing so in response to a prior stop that evening, which resulted in a written warning for a nonworking headlight. She produced this warning for Sergeant Parker. Sergeant Parker explained to defendant that he pulled her over because high beam lights are an indicator of a drunk driver. Defendant replied she was not drunk and that the prior officer instructed her to use her high beams in lieu of the nonworking headlight.
 

 Sergeant Parker then asked the passenger of the car to identify herself. Defendant claimed it was her daughter, and the passenger identified herself as Tabitha. Sergeant Parker later determined that her full name was Tabitha Henry, a resident of South Carolina.
 

 After reviewing the written warning defendant had received earlier, Sergeant Parker asked defendant for her license, which took her approximately 20 seconds to locate. According to Sergeant Parker, defendant seemed nervous because she was fidgety and was reaching all over the car and in odd places such as the sun visor.
 

 While reviewing defendant's license, Sergeant Parker realized he recognized defendant and asked where he had seen her before. She responded that they had seen each other the night before at the home of Greg Coggins, where Sergeant Parker responded to a fire. Sergeant Parker testified that he knew Mr. Coggins as the "main man" for methamphetamine in Cashiers and believed that "anybody that hangs out with Greg Coggins is on drugs." Sergeant Parker also testified that
 
 *316
 
 defendant's husband, Todd Bedient, regularly called the Sheriff's Office complaining that defendant was taking up residence with Mr. Coggins.
 

 Sergeant Parker returned to his patrol car to check on defendant's license and for any outstanding warrants on defendant or Ms. Henry. While seated in his patrol car, Sergeant Parker observed defendant moving around her car and reaching for her sun visor again. Meanwhile, the warrant checks for defendant and Ms. Henry turned up negative. Upon returning to defendant's car, Sergeant Parker requested that she join him at the rear of the car.
 

 Sergeant Parker first cautioned defendant about driving with her high beams on and gave her a verbal warning since she had already received a written warning for her nonworking headlight. They discussed the problems with defendant's headlights for 15 to 20 seconds longer. Then, Sergeant Parker changed the subject, asking defendant
 
 *322
 
 when she planned to change the address on her license. Defendant claimed that she was not going to change her address. Sergeant Parker informed her that if she was not going to live at the address listed on her license, she would need to change it within 30 days or be guilty of a misdemeanor.
 

 Only a few seconds later, Sergeant Parker changed the subject of his questioning again. He asked defendant if she had "ever been in trouble for anything." Defendant replied she had not. Sergeant Parker then asked defendant if she had anything in the car, to which she replied, "No, you can look." Sergeant Parker then handed defendant's license back to her and told defendant he was going to talk to Ms. Henry. As defendant attempted to reenter the vehicle, Sergeant Parker asked her to return to the rear of the car while he searched it. He then asked Ms. Henry to exit the car and stand by defendant.
 

 As Sergeant Parker began searching the car he noticed an open beer bottle lodged in between the passenger seat and the center console. He confirmed that both defendant and Ms. Henry had been drinking the beer. As he continued to search the car, he discovered "crystal matter," pills, baggies, and "a folded dollar bill with some type of powdery residue in it" in a pocketbook that defendant admitted belonged to her. Sergeant Parker then placed defendant under arrest.
 

 On 12 May 2014, defendant was indicted on one count of felony possession of a schedule II controlled substance and one count of possession of drug paraphernalia. Defendant filed a motion to suppress on 9 January 2015 that was heard on 16 March 2015 and denied in open court. The trial court later filed a written order on 23 March 2015 concluding
 
 *317
 
 that reasonable suspicion supported Sergeant Parker's continued questioning of defendant after he had verbally warned her about the use of her high beams and the invalid address on her license. The order further concluded that defendant voluntarily consented to additional questioning and the search of her car once the purpose of the stop was over.
 

 Defendant reserved her right to appeal the denial of her motion to suppress. On 17 March 2015, the day after defendant's motion was denied, defendant pled guilty to possession of a schedule II controlled substance and received a suspended sentence of five to 15 months conditioned on the completion of 12 months of supervised probation. The State dismissed the indictment for possession of drug paraphernalia in exchange for the guilty plea. Defendant timely appealed to this Court.
 

 Discussion
 

 On appeal, defendant contends that the trial court erred in denying her motion to suppress, arguing that Sergeant Parker unlawfully prolonged the traffic stop without having reasonable articulable suspicion to do so and, further, that her consent was invalid because it was given during this unlawful detention. We review a trial court's denial of a motion to suppress by "determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law."
 
 State v. Cooke,
 

 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982). "The trial court's conclusions of law ... are fully reviewable on appeal."
 
 State v. Hughes,
 

 353 N.C. 200
 
 , 208,
 
 539 S.E.2d 625
 
 , 631 (2000).
 

 A.
 
 The "Mission" of the Traffic Stop
 

 "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'-to address the traffic violation that warranted the stop, and attend to related safety concerns."
 
 Rodriguez v. United States,
 
 --- U.S. ----, ----,
 
 135 S.Ct. 1609
 
 , 1614,
 
 191 L.Ed.2d 492
 
 , 498 (2015) (internal citations omitted). "Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.' "
 

 Id.
 

 at ----,
 
 135 S.Ct. at 1615
 
 ,
 
 191 L.Ed.2d at 499
 
 (quoting
 
 Illinois v. Caballes,
 

 543 U.S. 405
 
 , 408,
 
 125 S.Ct. 834
 
 , 837,
 
 160 L.Ed.2d 842
 
 , 847 (2005) ). "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." %
 

 *323
 

 Id.
 

 at ----,
 
 135 S.Ct. at 1615
 
 ,
 
 191 L.Ed.2d at 499
 
 .
 

 *318
 
 Apart from these inquiries, an officer "may conduct certain unrelated checks during an otherwise lawful traffic stop.
 
 But
 
 ...
 
 he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.
 
 "
 

 Id.
 

 at ----,
 
 135 S.Ct. at 1615
 
 ,
 
 191 L.Ed.2d at 499
 
 (emphasis added). Thus, absent reasonable suspicion, "[a]uthority for the seizure ... ends when tasks tied to the traffic infraction are-or reasonably should have been-completed."
 

 Id.
 

 at ----,
 
 135 S.Ct. at 1614
 
 ,
 
 191 L.Ed.2d at 498
 
 .
 

 Here, defendant does not dispute the finding that Sergeant Parker had a legitimate basis for performing a traffic stop for the purpose of addressing defendant's failure to dim her high beam lights. Addressing this infraction, according to
 
 Rodriguez,
 
 was the original mission of the traffic stop. Defendant also does not contest that Sergeant Parker could then legitimately run a computerized license and warrant check of defendant-as the trial court found, the officer learned through these checks that defendant had a valid license and no pending warrants for her arrest. These two checks, considered by
 
 Rodriguez
 
 to be " 'ordinary inquiries incident to the stop,' " did not unlawfully prolong the stop.
 

 Id.
 

 at ----,
 
 135 S.Ct. at 1615
 
 ,
 
 191 L.Ed.2d at 499
 
 (quoting
 
 Caballes,
 

 543 U.S. at 408
 
 ,
 
 125 S.Ct. at 837
 
 ,
 
 160 L.Ed.2d at
 
 847 ).
 

 The trial court's unchallenged findings indicate that Sergeant Parker then returned to defendant's car and asked defendant to exit the car and join him at the rear of the car. Although Sergeant Parker arguably prolonged the stop by requesting defendant to get out of her car, the trial court found that this was "warranted in this case for purposes of officer's safety and to address the issues Sgt. Parker determined were related to the driver's license." Defendant does not challenge this finding, and we find it comports with
 
 Rodriguez,
 
 because Sergeant Parker was "attend[ing] to related safety concerns" and had legitimate questions regarding the address on defendant's license.
 

 Id.
 

 at ----,
 
 135 S.Ct. at 1614
 
 ,
 
 191 L.Ed.2d at 498
 
 .
 

 The trial court's findings then indicate that once at the rear of the car, Sergeant Parker first "provided defendant a second warning from law enforcement on the use of high beams...." At this point in time, the original purpose, or mission, of the traffic stop-addressing defendant's failure to dim her high beam lights-had concluded because, as the trial court found, Sergeant Parker gave defendant a verbal warning, deciding not to issue defendant a traffic ticket. Sergeant Parker had also completed the related inquiries because he determined defendant's license was valid, and she had no outstanding warrants for her arrest.
 

 Id.
 

 at ----,
 
 135 S.Ct. at 1615
 
 ,
 
 191 L.Ed.2d at 499
 
 .
 

 *319
 
 According to the trial court's findings, subsequent to this original verbal warning, Sergeant Parker asked defendant questions regarding the address on her license. These questions were reasonable because "there existed in the mind of Sgt. Parker a valid, articulable issue regarding whether her residence was with Todd Bedient or Greg Coggins" and "failure to change an address on a driver's license after a fixed number of days is a violation of N.C. Gen.Stat. § 20-7.1."
 
 [1]
 
 Defendant also did not challenge this specific finding, and it is binding on appeal.
 

 Therefore, even though the original mission of the traffic stop was completed upon Sergeant Parker's verbal warning to defendant regarding her failure to dim her high beams, the additional questioning regarding the address on her license, and thus defendant's prolonged detention, was supported by reasonable suspicion. This finding by the trial court comports with the standard in
 
 Rodriguez
 
 and is in accordance with prior North Carolina precedent as well.
 
 See
 

 State v. Myles,
 

 188 N.C.App. 42
 
 , 45,
 
 654 S.E.2d 752
 
 , 754 (" 'Once the original purpose of the
 
 *324
 
 stop has been addressed, there must be grounds which provide a reasonable and articulable suspicion in order to justify further delay.' " (quoting
 
 State v. Falana,
 

 129 N.C.App. 813
 
 , 816,
 
 501 S.E.2d 358
 
 , 360 (1998) )),
 
 aff'd per curiam,
 

 362 N.C. 344
 
 ,
 
 661 S.E.2d 732
 
 (2008).
 
 [2]
 

 Because Sergeant Parker had reasonable suspicion to prolong the stop beyond the conclusion of the original mission of the traffic stop, Sergeant Parker developed a new mission for the stop: to determine whether defendant was in violation of N.C. Gen.Stat. § 20-7.1 (2015) for failure to change the address on her license. After eliciting a response from defendant regarding her address, Sergeant Parker "explained to her the concerns over the change in address on the driver's license" and "gave an additional verbal warning about maintaining the proper address on her driver's license." At that point, and pursuant to
 
 Rodriguez,
 
 Sergeant Parker had concluded the second mission of the stop because
 
 *320
 
 he had determined not to issue defendant a ticket in connection with defendant's license.
 

 As this Court recognized in
 
 State v. Cottrell,
 

 234 N.C.App. 736
 
 , 744,
 
 760 S.E.2d 274
 
 , 280 (2014), once Sergeant Parker completed both missions, he needed reasonable suspicion to prolong defendant's detention beyond the conclusion of this second mission. In
 
 Cottrell,
 
 this Court held that after an officer addressed the two purposes for a traffic stop-defendant's failure to activate his headlights and defendant's loud music-with verbal warnings, the officer "was then required to have 'defendant's consent or grounds which provide a reasonable and articulable suspicion in order to justify further delay
 
 before
 
 ' asking defendant additional questions."
 
 Id.
 
 at 744,
 
 760 S.E.2d at 279-80
 
 (quoting
 
 Myles,
 

 188 N.C.App. at 45
 
 ,
 
 654 S.E.2d at
 
 755 ).
 
 See also
 

 State v. Jackson,
 

 199 N.C.App. 236
 
 , 242, 243,
 
 681 S.E.2d 492
 
 , 496, 497 (2009) (finding further detention and questioning of defendant was unreasonable seizure because it occurred " '[r]ight after the traffic stop was pretty much over,' " and "there was no evidence which could have provided [the officer] with reasonable and articulable suspicion to justify the extension of the detention").
 

 Here, after Sergeant Parker verbally warned defendant about her failure to dim her high beams and failure to maintain the proper address on her license, the two purposes-the two missions-of the traffic stop were addressed. And, at that point, Sergeant Parker needed reasonable, articulable suspicion that criminal activity was afoot before he prolonged the detention by asking additional questions.
 

 B.
 
 Reasonable Suspicion to Prolong the Stop
 

 According to the trial court's findings of fact, "[a]t the conclusion of the interaction ... Sgt. Parker asked the defendant 'Do you have anything in the vehicle?[,]' " to which defendant replied, " 'No. You can look.' " In support of its conclusion that "Sgt. Parker had reasonable suspicion to further question the defendant in that under the totality of the circumstances there existed specific articulable facts to indicate that criminal activity was afoot [,]" the trial court made the following findings:
 

 48. .... Sgt. Parker had reasonable articulable suspicion under the totality of the circumstances to further detain defendant. These factors consisted of observing defendant for eight minutes, finding her speech to be stuttering, defendant exhibiting fidgety actions which is consistent with use of methamphetamine, repeated fixation on the driver's side sun visor, failure to
 
 *321
 
 initially provide the last name of the passenger or explain the passenger was her daughter, continued operation of the same vehicle with the same lack of headlights on the same day after receiving a warning ticket for the same failure to dim headlights
 
 *325
 
 and having been at a residence known by law enforcement in Jackson County to be a location of drug use and drug transactions.
 

 ....
 

 55. Additionally, at the same time consent was given there did exist reasonable articulable suspicion based upon the totality of the circumstances presented to Sgt. Parker which supported further investigation and detention of defendant.
 

 56. In addition to the specific and articulable factors that defendant was observed for eight minutes, the speech stuttered, defendant exhibiting fidgety actions which is consistent with use of methamphetamine, defendant repeatedly manipulated the driver's side sun visor, defendant failed to initially provide the last name of the passenger or explain the passenger was her daughter, defendant continued to drive the same vehicle with the same lack of headlights on the same day after receiving a warning ticket for the same failure to dim headlights issue and was at a residence known by law enforcement in Jackson County to be a location of drug use and drug transactions, after getting consent to search the vehicle defendant then attempted to return to the vehicle thereby impeding the search of Sgt. Parker.
 

 Defendant contends that most of the circumstances identified in these findings of fact to justify further detention are not supported by competent evidence. Based on our review of the record, we agree.
 

 Defendant first claims that the evidence does not support the finding that defendant failed to initially explain the passenger was her daughter. After reviewing Sergeant Parker's dashboard video camera footage, it is clear that defendant identifies the passenger as her daughter in immediate response to Sergeant Parker's inquiry. This finding is, therefore, not supported by the evidence.
 

 *322
 
 Defendant next challenges the description of her fidgeting as " consistent with use of methamphetamine." At the suppression hearing, Sergeant Parker testified that defendant's conduct indicated nervousness. There is no evidence suggesting that Sergeant Parker believed defendant's "fidgety actions," or other nervous behavior such as her "fixation on the driver's side sun visor" or the "extreme rapidity in her movements" were consistent with the use of methamphetamine. Thus, this finding is also unsupported.
 

 Next, defendant argues that the trial court erroneously described the warning she received before Sergeant Parker's stop as a warning for "failure to dim high beams." As a result, she also claims the finding that defendant received the same verbal warning for the "same failure to dim headlights" is unsupported by the evidence. The dashboard video in fact evidences that defendant explained to Sergeant Parker that her original warning was for a nonworking headlight and, further, that the prior investigating officer instructed her to use her high beam lights in lieu of her nonworking headlight. Accordingly, we hold this finding regarding the warnings is unsupported by competent evidence.
 

 Finally, defendant challenges the finding that defendant was at a residence known for drug use and transactions. Sergeant Parker's testimony indicates that he observed defendant the night before the traffic stop at the home of Greg Coggins, a man who is known in the town of Cashiers as "the main man" for methamphetamine. We hold that this testimony is sufficient to support the finding that Mr. Coggins' home was a regular location for drug use and transactions.
 

 Accordingly, as defendant argues, the only competent findings supporting the trial court's determination that Sergeant Parker had reasonable suspicion to further question defendant are defendant's nervous behavior during the traffic stop, evidenced by her stuttering, rapid movements, and fixation with her sun visor, and her association with a drug dealer, evidenced by her presence at Greg Coggins' house the prior evening. Thus, we must determine whether these two factors establish reasonable articulable suspicion that criminal activity was afoot under
 
 *326
 
 the "totality of the circumstances."
 
 Myles,
 

 188 N.C.App. at 45
 
 ,
 
 654 S.E.2d at 754
 
 .
 

 " 'To determine reasonable articulable suspicion, courts view the facts through the eyes of a reasonable, cautious officer, guided by his experience and training at the time he determined to detain defendant.' "
 
 Id.
 
 at 47,
 
 654 S.E.2d at 756
 
 (quoting
 
 State v. Bell,
 

 156 N.C.App. 350
 
 , 354,
 
 576 S.E.2d 695
 
 , 698 (2003) ). "In addition, '[t]he requisite degree of
 
 *323
 
 suspicion must be high enough to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field.' "
 
 Cottrell,
 

 234 N.C.App. at 744
 
 ,
 
 760 S.E.2d at 280
 
 (quoting
 
 State v. Fields,
 

 195 N.C.App. 740
 
 , 744,
 
 673 S.E.2d 765
 
 , 767 (2009) ). Thus, "in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience."
 
 Terry v. Ohio,
 

 392 U.S. 1
 
 , 27,
 
 88 S.Ct. 1868
 
 , 1883,
 
 20 L.Ed.2d 889
 
 , 909 (1968).
 

 First, it is well settled that a defendant's nervous behavior during a traffic stop, although relevant in the context of all circumstances, is insufficient by itself to establish reasonable suspicion that criminal activity is afoot.
 
 See, e.g.,
 

 State v. Pearson,
 

 348 N.C. 272
 
 , 276,
 
 498 S.E.2d 599
 
 , 601 (1998) (suggesting that "[t]he nervousness of the defendant [was] not significant" to the determination of reasonable suspicion because "[m]any people become nervous when stopped by a state trooper");
 
 State v. Blackstock,
 

 165 N.C.App. 50
 
 , 58,
 
 598 S.E.2d 412
 
 , 417-18 (2004) (holding nervousness, by itself, is not sufficient to establish reasonable suspicion). Moreover, as this Court has recognized, the nervousness needs to be "extreme" in order to "be taken into account in determining whether reasonable suspicion exists[.]"
 
 Myles,
 

 188 N.C.App. at 49
 
 ,
 
 654 S.E.2d at 757
 
 . While defendant's nervousness in this case may have been substantial, it cannot, by itself, establish reasonable suspicion to extend the traffic stop.
 

 Although those findings of the trial court supported by the evidence show that defendant stuttered her words, moved around the car rapidly, and touched the sun visor repeatedly, this nervous behavior is a common response to a traffic stop. Furthermore, we note that the sun visor is not an uncommon location to keep a motorist's driver's license or registration. Thus, defendant's fixation on the sun visor could have been in response to an attempt to locate either one of these things and does not necessarily indicate suspicious movements.
 

 Furthermore, a person's mere association with or proximity to a suspected criminal does not support a conclusion of particularized reasonable suspicion that the person is involved in criminal activity without more competent evidence.
 
 See
 

 State v. Washington,
 

 193 N.C.App. 670
 
 , 678,
 
 668 S.E.2d 622
 
 , 627 (2008) (holding conclusion "that the officer had a right to make a brief investigatory stop of defendant
 
 because he was transporting
 
 [a person wanted for various felony offenses] was erroneous as a matter of law"). This circumstance is analogous to the
 
 *324
 
 well settled principle that mere presence in a high-crime area, although relevant in the totality of the circumstances, is insufficient by itself to establish reasonable suspicion.
 
 See
 

 Illinois v. Wardlow,
 

 528 U.S. 119
 
 , 124,
 
 120 S.Ct. 673
 
 , 676,
 
 145 L.Ed.2d 570
 
 , 576 (2000) ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime.");
 
 Blackstock,
 

 165 N.C.App. at 58
 
 ,
 
 598 S.E.2d at 417-18
 
 (holding that presence in high crime area alone does not amount to reasonable suspicion).
 

 Here, defendant's association with Greg Coggins-specifically the fact that Sergeant Parker saw defendant over at Coggins' house, "a residence known ... to be a location of drug use and drug transactions[,]" 24 hours prior to the stop-is also insufficient to establish reasonable suspicion. Although Sergeant Parker testified he believes "anybody that hangs out with Greg Coggins is on drugs[,]" Sergeant Parker did not testify to any particularized suspicion that defendant was on drugs the previous night when he encountered defendant at Coggins' house.
 

 *327
 
 Nor did he testify that he believed defendant was on drugs at the time of the traffic stop. Thus, Sergeant Parker did not tie defendant's association with Coggins to any basis particularized to defendant for reasonably suspecting that she was, at the time of the traffic stop, engaging in criminal activity.
 

 Considering the totality of the circumstances found by the trial court (as supported by the evidence)-defendant's nervous behavior and association with Greg Coggins-we find these two factors are together insufficient to amount to the reasonable suspicion necessary for Sergeant Parker to further detain defendant. The established case law in this State is consistent with that holding. For instance, in
 
 Myles,
 
 this Court found that the defendant's extremely nervous behavior, specifically his fast heartbeat, and the fact that his rental car was one day overdue, did not amount to reasonable suspicion.
 
 188 N.C.App. at 47, 50, 51
 
 ,
 
 654 S.E.2d at 756, 757, 758
 
 . Similarly, in
 
 Cottrell,
 
 the officer's knowledge of the defendant's past criminal drug convictions and the smell of a common cover scent for marijuana did not support a finding of reasonable suspicion under the totality of the circumstances.
 
 234 N.C.App. at 744
 
 ,
 
 760 S.E.2d at 280-81
 
 .
 

 The Fourth Circuit has also concluded that reasonable suspicion did not exist when the only indicators of criminal activity were the facts that defendant had an odd travel itinerary, that he rented a car from a state which is a source of illegal drugs, that defendant was stopped on an interstate known for drug trafficking, and that defendant was
 
 *325
 
 initially nervous.
 
 United States v. Digiovanni,
 

 650 F.3d 498
 
 , 513 (4th Cir.2011). Thus, because there was "no evidence of flight, suspicious or furtive movements, or suspicious odors, such as the smell of air fresheners, alcohol, or drugs" that would amount to suspicious behavior, the extended detention was impermissible.
 

 Id.
 

 Indeed, when considering factors collectively that individually would not warrant a conclusion that reasonable articulable suspicion existed, the Fourth Circuit has directed that "the relevant facts articulated by the officers and found by the trial court, after an appropriate hearing, must in their totality serve to eliminate a substantial portion of innocent travelers."
 
 United States v. Williams,
 

 808 F.3d 238
 
 , 246 (4th Cir.2015) (internal quotation marks omitted).
 
 See also
 

 Digiovanni,
 

 650 F.3d at 511
 
 (while acknowledging that "[t]he Supreme Court has recognized that factors consistent with innocent travel can, when taken together, give rise to reasonable suspicion[,]" holding that "[t]he articulated innocent factors collectively must serve to eliminate a substantial portion of innocent travelers before the requirement of reasonable suspicion will be satisfied" (internal quotation marks omitted)).
 

 Here, as in
 
 Williams
 
 and
 
 Digiovanni,
 
 defendant's nervousness when combined with the fact that she had associated with a drug dealer (who was not even present in the car) are not sufficient circumstances to eliminate a substantial portion of innocent travelers. These two circumstances simply give rise to a hunch rather than reasonable, particularized suspicion.
 
 Compare
 

 State v. Fisher,
 

 219 N.C.App. 498
 
 , 504,
 
 725 S.E.2d 40
 
 , 45 (2012) (finding reasonable suspicion given defendant's nervousness, cover scent, inconsistent answers regarding travel plans, and "driving a car not registered to the defendant");
 
 State v. Euceda-Valle,
 

 182 N.C.App. 268
 
 , 274-75,
 
 641 S.E.2d 858
 
 , 863 (2007) (holding reasonable suspicion present given defendant's extreme nervousness, refusal to make eye contact, cover scent, and inconsistencies in defendant's and passenger's stories regarding their trip);
 
 State v. Hernandez,
 

 170 N.C.App. 299
 
 , 309,
 
 612 S.E.2d 420
 
 , 426, 426-27 (2005) (holding reasonable suspicion existed based on defendant's nervous behavior, conflicting statements, and a cover scent).
 

 Therefore, under the totality of the circumstances here, defendant's association with Greg Coggins and nervous behavior do not amount to reasonable suspicion where there are no findings of evasive or inconsistent answers to the officer's questions, as noted in
 
 Fisher, Euceda-Valle
 
 , and
 
 Hernandez,
 
 no findings of flight or suspicious or furtive movements as indicated in
 
 Digiovanni,
 
 or any other findings suggesting that criminal
 
 *326
 
 activity is afoot amounting to more than Sergeant Parker's "inchoate and unparticularized suspicion."
 
 *328
 

 Terry,
 

 392 U.S. at 27
 
 ,
 
 88 S.Ct. at 1883
 
 ,
 
 20 L.Ed.2d at 909
 
 . Therefore, we hold that when Sergeant Parker further questioned defendant about the contents of her vehicle, he unlawfully prolonged the duration of the traffic stop.
 

 C.
 
 Defendant's Consent
 

 Since Sergeant Parker lacked reasonable suspicion to prolong the stop, defendant's consent to a search of her car was valid only if the extended encounter between Sergeant Parker and defendant became consensual.
 
 See
 

 Myles,
 

 188 N.C.App. at 45
 
 ,
 
 654 S.E.2d at 755
 
 (holding officer must have reasonable suspicion or defendant's consent to prolong the stop by asking additional questions). "Generally, an initial traffic stop concludes and the encounter becomes consensual only after an officer returns the detainee's driver's license and registration."
 
 Jackson,
 

 199 N.C.App. at 243
 
 ,
 
 681 S.E.2d at 497
 
 .
 

 Thus, defendant challenges the trial court's conclusion that "[t]he defendant voluntarily consented and agreed to additional questioning ... once the purpose of the traffic stop was over." In challenging this conclusion, defendant contends the findings of fact underlying that conclusion are unsupported by the evidence. The trial court first found: "Contemporaneously with Sergeant Parker advising her that she would not be charged or cited for any driving offense he returned her driver's license. These events occurred simultaneously...." The trial court then further found: "Contemporaneous with the return of the license, Sgt. Parker asked the defendant 'Do you have anything in the vehicle?' "
 

 After reviewing the dashboard video, we agree with defendant that these events did not occur simultaneously or contemporaneously as the trial court's findings suggest. To the contrary, Sergeant Parker continued to possess defendant's driver's license up until the moment he received consent to search her car. He only returned defendant's driver's license upon commencing the search. Therefore, because defendant's license had not been returned at the time defendant gave her consent and because, at that time, the stop had been unlawfully extended, defendant's consent was not voluntary. The trial court's pertinent findings of fact are not supported by the evidence, which necessarily invalidates the conclusion that defendant voluntarily consented to the additional questions after the conclusion of the stop.
 

 "Accordingly, the officer's continued detention of defendant violated defendant's Fourth Amendment right against unreasonable seizures and defendant's subsequent consent to a search of his car was
 
 *327
 
 involuntary as a matter of law."
 
 Cottrell,
 

 234 N.C.App. at 752
 
 ,
 
 760 S.E.2d at 285
 
 .
 
 See also
 

 Myles,
 

 188 N.C.App. at 51
 
 ,
 
 654 S.E.2d at 758
 
 ("Since [the officer's] continued detention of defendant was unconstitutional, defendant's consent to the search of his car was involuntary."). The trial court, therefore, erred in denying defendant's motion to suppress, and we reverse.
 

 REVERSED AND REMANDED.
 

 Chief Judge McGEE and Judge DAVIS concur.
 

 [1]
 

 As noted by the trial court's order, violation of this statute was a Class 2 misdemeanor until 1 December 2013. It is now punished as an infraction. N.C. Gen.Stat. § 20-35(a2)(3) (2015). This change was implemented pursuant to 2013 N.C. Sess. Law Ch. 385, § 4. Because the traffic stop was conducted on 28 February 2013, this change has no effect on the trial court's determinations.
 

 [2]
 

 Furthermore, assuming, without deciding, that Sergeant Parker did not have reasonable suspicion to further question defendant about her address, the question could be considered an " 'ordinary inquir[y] incident to [the traffic] stop' " because Sergeant Parker was checking the accuracy of defendant's driver's license.
 
 Rodriguez,
 
 --- U.S. at ----,
 
 135 S.Ct. at 1615
 
 ,
 
 191 L.Ed.2d at 499
 
 (quoting
 
 Caballes,
 

 543 U.S. at 408
 
 ,
 
 125 S.Ct. at 837
 
 ,
 
 160 L.Ed.2d at
 
 847 ).