HUNTER, JR., Robert N., Judge.
Felix Gabriel Rojas ("Defendant") filed a motion to suppress evidence found during a traffic stop. On 5 May 2016, the trial court orally denied Defendant's motion to suppress. On 6 May 2016, Defendant pled guilty to charges of trafficking in heroin by transportation and trafficking in heroin by possession. On appeal, Defendant contends the trial court committed error in denying his motion to suppress. We agree and, thus, vacate the trial court's denial of Defendant's motion and remand for further findings.
I. Factual and Procedural Background
On 16 March 2015, a Mecklenburg County Grand Jury indicted Defendant for two counts of trafficking in heroin and one count of possession with intent to sell or deliver a controlled substance. On 27 August 2015, Defendant filed a motion to suppress evidence. On 5 May 2016, the Mecklenburg County Superior Court called Defendant's case for trial and began with Defendant's Motion to Suppress.
The State first called Detective Eric Duft. On 10 March 2015, Detective Eric Duft and other members of the Drug Enforcement Agency and Homeland Security conducted surveillance at Vista Villa Apartments in Charlotte, North Carolina. Their investigation centered around Jaime Pena, who authorities suspected of selling large amounts of heroin. Detectives believed Pena lived at Vista Villa Apartments and had a "stash house" on Easthaven Drive.
Detectives saw Pena leave Vista Villa Apartments with his uncle, Raul Monroy, and drive to the suspected stash house. Then, Pena and Monroy left and drove to an apartment complex on Bonlyn Drive, about a mile away from the suspected stash house. The two men drove to a dumpster, tossed items into the dumpster, and left. Detective Duft recovered the items from the dumpster, which were a Cinnamon Toast Crunch cereal box containing plastic wrappings, duct tape, and paper towels. Detective Duft testified the plastic wrappings contained residue of heroin and appeared to have been washed. He knew the wrappings contained heroin residue because he could "smell the residue from heroin" and the wrappings were consistent with heroin wrappings.
Pena and Monroy then drove to a Quick Cash and a Dollar General, both within the general vicinity of the suspected stash house. Pena left the car, walked across a parking lot, and met two men, Defendant and Contreras. Monroy went inside the Dollar General, got back into his truck, and left. Pena, Contreras, and Defendant all got into a red Jetta and drove over towards Easthaven Drive and circled the neighborhood a couple of times. The car eventually parked at Twin Oaks Place, which is a street in the same neighborhood as Easthaven Drive.
Detective Duft saw Monroy exit the residence on Easthaven Drive. Monroy drove from Easthaven Drive to the nearby Twin Oaks Place, where the Jetta was parked. The men sat in their cars on the side of road, which Detective Duft deemed "suspicious." Detective Duft witnessed "a little bit of movement back and forth" between the two cars. Defendant and Contreras left in the Jetta, and Monroy and Pena left in the pickup truck, headed in opposite directions. Detective Duft followed Defendant, as Defendant drove away in the Jetta.
The State next called Detective Chris Newman. On 10 March 2015, Detective Newman surveilled Pena as a member of the investigation team. Detective Newman first observed Defendant around 3 o'clock in the afternoon.
Other members of the investigation team radioed Detective Newman and told him Defendant and Pena travelled towards Albemarle Road. Then, Detective Newman saw Defendant's Jetta travel through the intersection at W.T. Harris and Albemarle Road. Defendant changed lanes without signaling and got too close to another vehicle in the new lane, both of which are traffic moving violations. Detective Newman activated his lights to conduct a traffic stop of Defendant's Jetta, and Defendant pulled over into an apartment complex. Defendant was in the driver's seat, and Contreras was in the passenger seat.
Defendant gave Detective Newman his license and registration. Detective Newman "advised [Defendant] of the stop" and Defendant apologized for committing traffic violations. Detective Newman asked Defendant to step out of the Jetta, which Defendant did. Detective Newman asked Defendant if Defendant had been involved in drugs, to which Defendant answered no. Detective Newman learned Defendant was on probation through a CJLEADS system search. When asked why he was on probation, Defendant admitted he had a prior drug charge in Minnesota and said "he was with the wrong people at the wrong time." Detective Newman also spoke with Contreras and noticed there was a cell phone laying in the vehicle.
Detective Newman asked for Defendant's consent to search the vehicle. Defendant became "agitated" and did not give Detective Newman consent to search the vehicle. Detective Newman instructed Defendant to move from the back of the vehicle to the front of the vehicle. Detective Newman then went to deploy his drug dog ("K-9") unit to sniff around Defendant's vehicle. From the time of the stop to the beginning of the K-9 sniff, approximately five to ten minutes had passed. When Detective Newman went to get his K-9 out of his car, she looked to be too hot and was not in "word mode."
Nonetheless, Detective Newman brought the K-9 to the front of the vehicle and noticed the cell phone he saw before was now broken on the passenger side floorboard. Detective Newman concluded Defendant and Contreras destroyed the cell phone in an attempt to hide evidence. As Detective Newman led the K-9 around Defendant's vehicle, Defendant admitted he smoked marijuana a couple of days before. Detective Newman did not detect the odor of marijuana.
Based on the following, Detective Newman conducted a probable cause search of the vehicle: (1) the cell phone being broken during the traffic stop; (2) Defendant's admission of smoking marijuana; (3) Defendant's recent, prior meeting with a known heroin trafficker; and (4) the quick meeting in the neighborhood.
During his search of Defendant's vehicle, Detective Newman found a "bulging" cell phone box. Detective Newman opened the box, which contained packaging material. Officers took Defendant and Contreras into custody. Officers then cut a slit in the package and discovered heroin.
The State admitted the recording of the traffic stop into evidence. The video mostly matched Detective Newman's testimony. The recording showed the K-9 sniff occurred over ten minutes into the traffic stop.
Following argument from the State and Defendant, the trial court made its oral findings and denied Defendant's motion to suppress. In its initial findings, the trial court did not make any findings regarding detention of Defendant, beyond the initial stop. Defendant's counsel requested specific findings regarding the scope of the stop. Then, the trial court found the following:
The defendant was stopped initially for the traffic violations. However, the detention of the defendant, to use a K-9, was not unreasonable. That was a fairly short period of time. The defendant was thereafter detained because the defendant gave answers to the questions of the officer, that is, that the defendant smoked marijuana in the car. The officer then conducted further questions and answers about the defendant's vehicle as a result thereof, therefor. The Court, under the circumstances, considering all of the circumstances, the Court finds that the delay was not unreasonable.
The next day, 6 May 2016, Defendant pled guilty, pursuant to an agreement to charges of trafficking in heroin by transportation and trafficking in heroin by possession. In exchange for his guilty plea, the State agreed to dismiss a possession with intent to manufacture, sell, or deliver heroin charge. The trial court accepted the plea agreement and sentenced Defendant to 90 to 120 months imprisonment and imposed a $100,000.00 fine. Defendant orally entered his notice of appeal.
II. Standard of Review
Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. Cooke , 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) (citations omitted). "The trial court's conclusions of law ... are fully reviewable on appeal." State v. Hughes , 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).
III. Analysis
The Fourth Amendment protects "against unreasonable searches and seizures...." U.S. Const. amend. IV. "A traffic stop is a seizure 'even though the purpose of the stop is limited and the resulting detention quite brief.' " State v. Styles , 362 N.C. 412, 414, 665 S.E.2d 438, 439 (2008) (quoting Delaware v. Prouse , 440 U.S. 648, 653, 59 L.Ed. 2d 660, 667 (1979) ). As such, "[t]he scope of the detention must be carefully tailored to its underlying justification." Florida v. Royer , 460 U.S. 491, 500, 75 L.Ed. 2d 229, 238 (1983).
"[T]he tolerable duration of police inquires in the traffic-stop context is determined by the seizure's 'mission'-to address the traffic violation that warranted the stop, and attend to related safety concerns." State v. Bedient , --- N.C. App. ----, 786 S.E.2d 319, 322 (2016) (quoting Rodriguez , --- U.S. at ----, 191 L.Ed. 2d. at 498 ) (brackets in original). In addition to deciding whether to issue a traffic ticket, a law enforcement officer's "mission" includes " 'ordinary inquires incident to the traffic stop.' " Id. at ----, 786 S.E.2d at 322 (quoting Rodriguez , --- U.S. at ----, 191 L.Ed. 2d. at 499 ).
[T]he performance of a dog sniff is not a type of check which is related to an officer's traffic mission. Therefore, under Rodriguez , an officer who lawfully stops a vehicle for a traffic violation but who otherwise does not have reasonable suspicion that any crime is afoot beyond a traffic violation may execute a dog sniff only if the check does not prolong the traffic stop.
State v. Warren , --- N.C. App. ----, ----, 775 S.E.2d 362, 365 (2015) (internal citations omitted).
As explained by this Court in State v. Bullock , --- N.C. App. ----, 785 S.E.2d 746 (2016) :
Although prior to Rodriguez , many jurisdictions-including North Carolina-applied a de minimis rule, ... the holdings in these cases to the extent that they apply the de minimis rule have been overruled by Rodriguez . Thus, under Rodriguez , even a de minimis extension is too long if it prolongs the stop beyond the time necessary to complete the mission.
Id. at ----, 785 S.E.2d at 752. (internal citations and quotation marks omitted).
At the outset, we note Defendant does not challenge the constitutionality of the initial stop of his vehicle. Defendant argues the trial court failed to conclude the extension of the traffic stop was supported by reasonable suspicion. The State contends the trial court's finding that the detention of Defendant was "not unreasonable" is sufficient and requiring the words "reasonable suspicion" would prioritize form over substance.
Here, Detective Newman initiated the traffic stop due to two traffic violations committed by Defendant-Defendant's failure to signal a lane change and following too closely to another vehicle.[1] Thus, the tolerable duration was the time needed to address the traffic violations and attend to safety concerns. Bedient , --- N.C. App. at ----, 786 S.E.2d at 322 (citation omitted). Detective Newman's employment of his K-9 is "not a type of check which is related to an officer's traffic mission." Warren , --- N.C. App. at ----, 775 S.E.2d at 365. Thus, for the extension caused by the K-9 sniff to be constitutional, it must be based on reasonable suspicion that criminal activity is afoot.
The trial court failed to make the requisite findings regarding the extension of the traffic stop created by the K-9 sniff. In its oral findings, the trial court found the detention was "a fairly short period of time" and "not unreasonable." However, the trial court applied the pre-Rodriguez standard and addressed the length of the extension. See Bullock , --- N.C. App. at ----, 785 S.E.2d at 752. Post-Rodriguez , the constitutionality of the detention is not determined by the length of the extension, but by whether the extension, even a de minimis extension, was based on reasonable suspicion. Id. at ----, 785 S.E.2d at 752.
We do not make any holding concerning the legality of the continued detention of Defendant, as that particular analysis should be determined by the finder of fact in the first instance, supported by findings of fact and conclusions of law clearly demonstrating what analysis was conducted and the basis for the ruling made.
[W]hen the trial court fails to make findings of fact sufficient to allow the reviewing court to apply the correct legal standard, it is necessary to remand the case to the trial court. Remand is necessary because it is the trial court that "is entrusted with the duty to hear testimony, weigh and resolve any conflicts in the evidence, find the facts, and, then based upon those findings, render a legal decision, in the first instance, as to whether or not a constitutional violation of some kind has occurred."
State v. Salinas , 366 N.C. 119, 124, 729 S.E.2d 63, 67 (2012) (internal citations omitted).
We, therefore, vacate the trial court's denial of Defendant's motion to suppress and the judgment entered 6 May 2016 and remand to the trial court for entry of a new order determining Defendant's motion to suppress. The trial court may, in its discretion, conduct a new hearing and take additional evidence.
VACATED AND REMANDED.
Report per Rule 30(e).
Judges BRYANT and DIETZ concur.

At the hearing, Detective Newman testified several times the reason for the traffic stop was Defendant's failure to signal when changing lanes and following too closely to another vehicle. However, Detective Newman also mentioned the drug investigation was part of the reason he stopped Defendant. In its oral findings, the trial court found "[t]he reason for the officer stopping the Volkswagen Jetta was failure to give a turn signal or signal and followed to[o] close." This unchallenged finding of fact is binding on appeal. Hoover v. Hoover, --- N.C. App. ----, ----, 788 S.E.2d 615, 616 (2016) (citations omitted).